This is a suit under the State Workmen's Compensation statute, Act No. 20 of 1914, in which the plaintiff seeks to recover compensation at the maximum rate of $20 per week, with legal interest, for a period not exceeding 400 weeks, beginning September 30, 1942, less a credit for two weeks' compensation paid, and in addition thereto, the sum of $250 for medical expenses as allowed under the act.
He alleges that on September 30, 1942, while working for his employer, The M.W. Kellogg Company which was engaged in the construction of a magnesium plant in the Parish of Calcasieu, and while within the course and scope of his employment, he received accidental injuries to his left foot and left eye, the nature and extent of which were such as to permanently and totally disable him from performing his usual occupation as a common laborer. He alleges that he is uneducated and untrained in any particular trade or profession and that he therefore cannot do or perform the only kind of work for which he is fitted, that is, that of manual labor. He avers that The Travelers Insurance Company carried his employer's compensation insurance and he accordingly makes it the defendant in the suit and prays for judgment against it in the sums demanded.
It is admitted in the answer of the defendant that plaintiff was employed by The M.W. Kellogg Company at a rate of wage sufficient, if compensation is due him, for an award of the maximum amount as demanded by him. It is further admitted that he was accidentally injured while in the course and scope of his employment and then alleged that he was paid two weeks' compensation for his said injuries. The defense is that he has not been rendered totally and permanently disabled from performing his usual work as a common laborer, by reason of the injuries alleged, and that he has been paid all compensation he was entitled to receive therefor.
The district judge was of the opinion that plaintiff had sustained a temporary, total disability as a result of his injuries and he accordingly awarded him compensation at the rate of $20 per week for a period not to exceed 300 weeks, less a credit of $40 for the two weeks for which he had been paid. In addition he awarded the sum of $27 for medical expenses. From a judgment so decreeing the defendant took this appeal and plaintiff has answered asking that the judgment be amended by increasing the number of weeks for which he is to be paid compensation, not, however, to exceed 400 weeks.
The sole issues in the case are those governing the nature and extent of plaintiff's injuries and his resulting disability and, as would necessarily follow, the period during which he should be paid compensation.
The testimony reveals that, at the time he was injured, plaintiff was working on a scaffold which had been erected over a pit or an excavation some twelve feet deep. His job was to push concrete down a chute by means of which the pit was filled in order to serve as a foundation pillar. While engaged in his said duties, the chute became clogged with concrete and the excessive weight thus created caused one of its supports to give way. The wet concrete than began to fall against the scaffold on which plaintiff was standing. Some of it struck his foot, threw him off his balance and he fell backwards. As he fell, his left foot got caught between the chute and the scaffold and he remained suspended with his head downward in the pit, the weight of his body, some 178 pounds, pulling against his foot. Some of the concrete poured over his body including his face and eyes. He remained in this position until assistance from his fellow-employees could reach him and was taken down. He was then carried to the first aid station and then taken to St. Patrick's Hospital in Lake Charles. It might be mentioned here that plaintiff's duties also required that, at times, he push wheelbarrows loaded with concrete over the scaffold, when he was not engaged in performing the work he was doing when he was injured.
Plaintiff was first examined by Dr. R.G. Holcombe who referred him to the hospital. He ordered an X-ray made of his foot. From his own examination together with the X-rays he concluded that plaintiff had a contusion which ordinarily has a recission within two or three weeks. *Page 488 
The X-ray reports were negative as to fracture. After he first saw the plaintiff, Dr. Holcombe became ill and he had no further connection with the case.
Dr. W.P. Bordelon saw the plaintiff with Dr. Holcombe at the hospital and attended him after the latter became ill. For his foot injury, plaintiff was also examined by Dr. L. Stevens and Dr. W.G. Fisher. Dr. D.C. Iles and Dr. Olin Moss examined him for the ailment to his eye and Dr. C.G. McKinney is the one who made the X-ray pictures of his foot. All of these doctors, in addition to Dr. Holcombe testified either at the trial of the case, or by deposition, Drs. Bordelon and Moss as witnesses called by the plaintiff the others by the defendant.
Dr. Bordelon states that he did not see the plaintiff from the day he examined him with Dr. Holcombe at the hospital until some later date when he called on him at his office. Mr. C.H. Austin, for whom plaintiff had worked on the Lake Charles docks before, seemed to have taken a kindly interest in him and was the one who sent him to Dr. Bordelon. Speaking of the condition of his foot on that day, Dr. Bordelon says that the instep and ankle were a little swollen and that plaintiff was more or less flat footed. He put a support under his arch for a period of about two weeks and prescribed rest and hot applications. Verifying the date by the date of the bill he rendered to Mr. Austin, he states that on November 8th, plaintiff told him that he felt all right and the swelling had gone. The foot appeared to be all right, plaintiff told him that he was practically free of pain and didn't think there was any further need for treatment. He states further that plaintiff then left the office and that he hasn't seen him since. He finally states that based on the plaintiff's statement and his own observation, he felt that he could go back to work, as far as his foot was concerned.
Dr. Stevens who was in charge of the employer's first aid station, testified that between October 8th and 21st, plaintiff called at the station some two or three times complaining of his foot and eye and that from his examination made on October 21st, he could see no reason why he couldn't go back to his work as a common laborer.
Dr. Fisher examined him on November 13th, and says that he could find no evidence of injury. There was no swelling or atrophy of the muscles which one could expect to find from a foot injury and he found no pain on moving the ankle and on examination to determine a foot injury. He says that plaintiff was using a cane but he could find nothing to justify its use. When asked to express an opinion, based on his examination, as to plaintiff's ability to do ordinary work, he definitely states that he didn't think there was any injury that would interfere with his doing ordinary manual labor.
Dr. Moss whom plaintiff consulted for the injury to his eye examined him on October 21st, and treated him until December 15th, seeing him nine times between those dates. On his first examination he found the pupil to be dilated and he made a diagnosis of paresis. On his last examination he still found a slight dilation of the pupil, not marked, however. The paresis had improved but was still present in a slight amount. He was then asked to estimate the percentage of disability he found and answers: "It's hard to estimate disability of that type. I estimate it from a standpoint of just that one eye. I think he can do anything he wants to regardless of just that one eye." On cross-examination he was asked whether the defect in his eye would in any manner interfere with plaintiff performing the duties of a common laborer and he answers: "None, at all."
Dr. Iles saw plaintiff in the hospital on the day he was taken there. His eye was slightly red but he did not think there was much the matter with it. He did not see him again until a few days before the trial of the case and on an examination made at that time he still found some dilation of the pupil. He referred to the condition as a paresis which is a dilated-paralysis. However, he says, a man can have such a paralysis without lack of sensation and plaintiff has not got paralysis of sensation or of motion because the pupil is contracting all the time. This did cause a slight defect, he stated, but when asked to estimate the percentage of defective vision, he answered that it was so slight that there was no way of estimating it. Speaking of paresis, such as plaintiff has, he stated that they usually get well in the course of time. He wouldn't say whether it would be a week or six months. Judging from the improvement plaintiff had made since he last saw him *Page 489 
he would judge that in from a week or ten days to a month, he would have a normal pupil. Even in the condition he found him, however, he seemed to be convinced that plaintiff could do any kind of work that is ordinarily done by a common laborer. In his opinion, he could run an automobile, do the work of a stevedore, in fact, perform all kinds of work.
The foregoing, we think, fairly summarizes all the medical testimony found in the record. As is to be noted there is nothing found in it on which to base any conclusion that plaintiff is in any way incapacitated from doing manual labor by reason of the injury to his foot. The only testimony to dispute it is that of the plaintiff himself who of course could speak only of subjective symptoms he felt and that of lay witnesses who testified that he had to use crutches to get about and some also who contended that his instep was still swollen. In cases of this kind, however, where the medical testimony is unanimous to the effect that objectively, there are no signs of injury of such nature as to prevent the employee from pursuing the same kind of work he was doing at the time he was hurt, lay testimony must be subordinated and yield to that of men versed in medical science. The mere statement of the witness, Austin, for example, who said that he would not employ plaintiff as a stevedore, because of his injury, cannot be accepted over that of all the doctors who testified that there was no reason why plaintiff could not do the work of a manual laborer.
With regard to the slight defect of vision in plaintiff's left eye, unless we totally disregard the testimony of Dr. Moss, who was his witness, we are bound to conclude that it was so slight that it did not affect his capacity to do the work of a common laborer. Dr. Iles was of the same opinion as Dr. Moss concerning the effect of defective vision. Again, regarding this injury, counsel seem to rely to a great extent on the testimony of Mr. Austin who stated that he would not let plaintiff operate his automobile on account of his bad eye-sight but in view of Dr. Iles' testimony that he can do any kind of work, including the running of an automobile, we deem it proper to yield to the latter's opinion. Accepting his opinion and under the most favorable and liberal analysis of his testimony, although plaintiff's defective vision did not interfere with his performing the ordinary duties of a laborer, yet on the day of trial he still had what he called paresis and his pupil was not yet normal. He was convinced however that within a period of from one week to a month the pupil would have returned to normal. One month after the date of the trial would be January 22, 1943. Adopting this most liberal view toward the plaintiff, we conclude that he should have recovered compensation until that date.
The period of compensation would therefore be from September 30, 1942 to January 22, 1943, or a period of seventeen weeks. Defendant of course is entitled to credit for the amount of compensation paid for two weeks.
For the reasons stated it is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the period of compensation to be paid the plaintiff from not to exceed three hundred weeks, beginning September 30, 1942, less a credit for two weeks' compensation already paid, to the period of seventeen weeks, beginning from that same date, subject to the same credit. In all other respects, the judgment is affirmed.