McINNIS, Judge.
This is a compensation case against Mississippi Valley Engineering & Construction Co. and its insurer, United States Fidelity & Guaranty Co., for compensation; at the rate of $27.30 per week .during disability not to exceed 400 weeks, less $20.80' paid November IS, 1951, and for $60 medical expense.
On September 19, 1951 plaintiff was employed by' the construction company in the construction of a revetment on the west-bank of Red River about a half mile north, of Coushatta at a wage of $42 a week. His work was weaving or lacing lumber mats to be placed along the bed of the river. In some manner one of the pieces of lumber 2" x 4" got loose from him and. struck him in the chest, causing him to fall-, to the ground, and in some way his left, foot was caught under a piece of railroad, track steel, and he alleges that his foot was. badly bruised, sprained, and a ligament, was torn loose. He continued to work until September 26, 1951, but he says because of the pain in his foot he had to stop work. He alleges that his left foot is tender,, painful and swollen, and that he is suffering from traumatic inflammation of the bursa beneath the phalanges of the first, metatarsal -bone of his left foot, which resulted from the accident, and that he is unable to do any work requiring him to stand, work or use his left foot.
Defendants answered admitting the employment said to be for 8 hours a day for 5 days a week, and the hazardous nature of the work, and that plaintiff received a light blow to'his chest, causing him to fall, and., deny generally the remaining substantial,, allegations of the petition.
*217 After trial on the merits there was judgment for plaintiff for compensation at the rate of $27.30 per week for not to exceed 400 weeks, beginning September 26, 1951, less a credit of $20.80 paid November 15, 1951, and $60 medical expense, and such additional medical expense as plaintiff may require, not to exceed a total of $500, with 5% per annum interest on past-due payments, and fixing the attorney’s fee at 20% •of the amount recovered, not to exceed $1,-<000.
Defendants prosecute a suspensive appeal from the judgment.
There is no dispute as to the happening of the accident, but the medical testimony is conflicting in many respects. Dr. L. S. Huckabay testified on behalf of plaintiff. He examined plaintiff’s foot and made X-ray pictures of it on January 20, 1952, and found it was tender and swollen in the area of the phalanges and first metatarsal hone with calcium deposits in the area of the joint, and diagnosed the condition as traumatic inflammation of the periosteum of bursa beneath the phalanges of. first metatarsal bone of left foot, and is of the opinion that he is disabled to do work requiring standing and walking. He did say that plaintiff’s condition might be relieved by an operation by a qualified orthopedic surgeon, or he might obtain relief by a pad to take the pressure off the injured part.
Dr. Gene D. Caldwell, orthopedic surgeon, examined plaintiff on December 13, 1951, and his testimony on behalf of defendants was taken by deposition April 1, 1952. He found a well developed, well nourished man 54 years of age, who walked with a protective limp. The left foot appeared normal with no swelling. There was full range of ankle motion and the tarsal joints of the left foot compared to the right. Patient complained of pain in region of first metatarsophalangeal joint, that is where the great toe joins onto the foot — on the plantar or weight bearing aspect. Pressure over the sesamoid bones— two small bones under that joint which bear all the weight — produced no subjective pain but he complained of pain on pressure along the shaft of first metatarsal bone, the plantar aspect. There was full range of motion in great toe joint without pain. Standing, he stood on the outer side of the foot and said he was unable to bear weight on inner side of foot. X-rays were made of -both feet in three projections for comparison, and showed no evidence of bone or joint pathology. The bone structure appeared normal. He found no inflammation of the periosteum.
Answering questions on cross-examination he said that following trauma, formation of calcium around joints is possible, and that it is usually -a slow process, and might not be noticeable for several months and that it causes pain. Pie also says that if the foot continues to swell there is some reason for it. Dr. 'Caldwell did not believe plaintiff was disabled" at the time he examined him December 13, 1951.
Dr. L. E. L’Herrison testified on behalf of defendants. He saw and examined arid treated plaintiff on the day he was injured. X-rays*were taken and no fractures disclosed. The doctor found tenderness over the head of the first metatarso-phalangeal joint, and some swelling, and diagnosed the injury as a ligamentous tear of the joint. The treatment was strapping the foot and hot soaks. The Doctor saw him again on October 3 and November 21, 1951, and the last time, found no swelling, but plaintiff still complained of joint pain, and the doctor thought there might be traumatic arthritis; however, the X-ray was negative. The doctor says that the fact that the X-ray taken November. 21, 1951 showed no objective symptoms would not necessarily mean that calcium would not be shown on the X-ray later on. He looked at the X-ray Dr. Huckabay made January 20, 1952 and saw some indication of calcification, but he was not certain about it. When asked if he could think of anything that might explain the complaint of swelling, he said any joint injury, whenever there is a tear or any disturbance of the joint, even the smaller joints, fluid will collect and cause pain from pressure, even though the joint itself does not swell. Plaintiff was discharged on November 21, 1951, as able to work, though he was still complaining of pain.
*218 On the day of the trial, April 25, 1952, Dr. L’Herrison examined both of plaintiff’s feet in the court room, and found no swelling, and thought there was nothing abnormal about the left foot; however he did not rule out the possibility of traumatic arthritis in the toe joint.
Considering all the testimony of all the doctors, the conflict in that of Drs. Caldwell and L’Herrison for defendant and Dr. Huckabay for plaintiff is not too wide. All agree that if plaintiff is suffering pain there is a reason for it, though only Dr. Huckabay found the reason in the X-ray pictures he made in January.
The testimony of plaintiff, his wife and four of his neighbors is to the effect that he suffers pain, and his foot swells, and he is unable to work. It appears from all the evidence that plaintiff limps and that he favors the left foot by walking on the outside of it. In all probability plaintiff is exaggerating his disability. This is not unusual in these cases. *
We have been cited the case- of Vilce v. Traveler’s Insurance Co., La.App., 16 So. 2d 486, where plaintiff sustained injury very similar to the injury Baker sustained, and in which case the court said that there is nothing in the medical testimony on which to base a conclusion that the injured party is disabled, and rejected the lay testimony that the man was disabled and walked with crutches. However, a rehearing was granted in the cited case, 17 So-.2d 389, and on rehearing, 18 So.2d 243, was remanded to the district court for further testimony on the question of disability. On the second trial in the district court plaintiff was awarded judgment for 300 weeks for temporary total disability. On appeal from the judgment the Court of Appeal, First Circuit, 24 So.2d 485, concluded that plaintiff was not totally disabled, but his ability to do manual labor was only impaired. He was earning $35 a week when injured and $26 a week at the time of the trial. The judgment was amended by reducing the award to 65% of $9, or $5.85 per week, and affirmed.
In the case before us the medical testimony is not unanimous to the effect that plaintiff is not disabled. Dr. Huckabay says he is. The lay testimony is all favorable to plaintiff’s claim of disability. It may be that this man is not disabled, and if he is not he is a malingerer. There is no convincing evidence in the record that he is a malingerer.
The question is one of fact. The district judge saw and heard the witnesses- and is in better position to resolve this question of fact than this court, and his-finding of fact is not to be disturbed unless manifestly erroneous. We are not prepared to say there is manifest error in his-finding of fact in this case.
For these reasons, the judgment appealed from is affirmed at the cost of defendants, appellants, in both courts.