This is a workmen's compensation suit in which the plaintiff alleges, in his petition, that he was employed as a common laborer clearing a right of way in West Feliciana Parish for L.O. Brayton and Company, whose compensation insurance carrier is the Travelers Insurance Company, made defendant. He avers that while so employed, he sustained a compensable accidental injury resulting in the amputation of the middle finger of his right hand. He alleges that he is permanently and totally incapacitated from doing the kind and character of work for which he is fitted by training and experience and which he was doing at the time of his injury, or work of any reasonable character, and prays for compensation in an amount of $7.80 a week (65% of his weekly wage of $12) for 400 weeks, less the sum of $156, with interest and costs.
The defendant's answer is a denial of the allegations that plaintiff is totally and permanently disabled from doing work of the kind and character for which he is fitted by his training and experience, or of doing work of any reasonable character. The injury and resulting amputation of his finger is admitted but it is alleged that he was paid full compensation therefor at the rate of $7.80 per week for a period of 20 weeks as provided for in the workmen's compensation statute, Act No. 20 of 1914, Sec. 8, paragraph 1 (d) 3, amended by Act No. 242 of 1928. It is therefore urged that any further demand be rejected.
The demand for compensation based on total, permanent disability has apparently been abandoned and the issue between the parties now is one that is sharply drawn as between compensation due for partial disability to do work of any reasonable character under the provisions of Sec. 8, paragraph 1 (c) of the Act and that due for the loss of a finger as provided for under Sec. 8, paragraph 1 (d) (3).
The phrase "disability to do work of any reasonable character" has been defined in almost countless decisions from all of which it can fairly be stated that it means disability to do work that is reasonably of the same kind and character as that which the injured employee is, by his training, education, experience and his status in life, accustomed to do. Compensation for the loss of, or the loss of use of a member of the body, is governed by what are frequently referred to as the specific provisions of the statute and is payable regardless of any question of disability. As the compensation due for the loss of any finger other than the thumb or index finger is sixty-five per cent of the wages during 20 weeks, the defendant contends that it has complied with its obligation to this plaintiff in full, having paid him that amount for the period stated. Whether he is entitled to receive, in addition thereto, what is now being claimed on his behalf, resolves itself into a question of fact which may be stated as follows: Is he, by reason of his injury and the result which followed, disabled to do work that is of the kind and character just defined? That question which presents the issue in the case has therefore to be determined from the evidence found in the record.
Before working on the job on which he was injured, plaintiff was employed in the laundry at the East Louisiana Hospital at Jackson, La., where according to his own testimony, he did "just general work" helping with the extractors, loading and unloading them with clothes. His education is limited and he himself classifies his work as common labor. It was while sharpening an axe which he used in clearing *Page 83 
a right of way that he was injured. After the accident he worked a short while for a cleaning and pressing shop in Jackson, soliciting business on a commission basis, and from there went to the laundry at the East Louisiana Hospital. When he worked in the laundry before he was injured, he was paid $40 per month and when he returned, he received $50 per month, both times being furnished with his board and lodging. It should be stated however that the increase in wages was in line with a general increase to all employees of that institution.
Mr. S.A. Mire who was plaintiff's foreman in the laundry when he first was employed there and is now, testified that he does not work as fast and as efficiently as he did before he was injured. He described the work he has to do as one requiring quite a bit of strength in both hands to load and unload the washing machines and then packing the clothes very tightly in the extractor which operates with centrifugal force. This involves a considerable amount of finger work and hand grip. Otherwise, plaintiff's work consists of the general maintenance and run of the laundry equipment. Mr. Mire estimates that there is about a fifteen per cent deficiency in plaintiff's work as compared to what he did before his accident. He seems to want to create the impression that he favors him on account of his injury and yet he is unable to state exactly in what manner his work has slowed up, admits that he would term him "an average good worker" and says that if he did not think that he was he would not have tried to get him back in his department when he learned that his services were again available.
Dr. B.B. Lane, a medical expert produced by the plaintiff, testified that all the phalanges of his middle finger on the right hand were missing and that there was a little sensitiveness to pressure at the point where the bone was removed. From his experience as an examiner for industrial plants in 1927 and 1928, and in 1933 and 1935, he would not pass the plaintiff for employment at hard common labor, estimating that because the middle finger of his right hand is missing, he has a disability of from twenty to thirty per cent of the entire body. He does admit however that in quite a few cases he has known persons with amputated fingers did perform hard manual labor.
Dr. C.S. Toler is the physician who attended the plaintiff when he was injured, treated him for a few weeks and was finally forced to resort to the amputation of the finger which he personally performed. He testified for the defendant and states that the results of the operation were excellent. He says, and naturally so, that in the absence of a finger there is a space left open in the hand and perhaps a resulting loss of grip, but the muscles of the hand and of the remaining fingers will compensate for that loss. He is definitely of the opinion that the plaintiff can do hard manual labor. This doctor will not commit himself on the point regarding the sensitiveness plaintiff complains of for the reason that there is no way of measuring it and the matter is one which is purely subjective.
Dr. C.C. Blakely, also a witness for the defendant, testified after examining the plaintiff, that he had a well-padded end of the amputated part of the finger and the muscle tone was all right. Upon being told what kind of work plaintiff was performing at the time of the accident he stated that in his opinion he would probably be as capable of doing it now the same as before. Like Dr. Toler, he expresses no opinion on the question of pain or sensitiveness as that depends entirely on plaintiff's own word that he does have such a feeling.
The foregoing summary of all the material testimony in the case leads to the conclusion that the amputation of plaintiff's finger was successfully performed, that he has had a perfect recovery and the only result he is left with is the loss of a finger, for which he has been paid all compensation he was entitled to under the law. Not only is the medical proof to the effect that he can perform the work of a common laborer, the kind he did before the accident, and the only kind for which he is fitted by his training, experience and status in life, but moreover the fact is that he is presently doing work of that very nature and the very same work which he was doing before going on the job on which he was injured, and incidentally is earning more money than he formerly did. The situation is different from that shown in the cases of McQueen v. Union Indemnity Co., 18 La.App. 612, 136 So. 761, and Sumrall v. E.I. Du Pont De Nemours Co., La.App.,1 So.2d 430, where the injured employees although earning money *Page 84 
on other jobs after their accidents, were permitted to recover compensation, because their injuries prevented them from obtaining employment in the same kind and character of work which they had been accustomed to perform.
The work of a manual laborer is one requiring principally hard physical and bodily exertion and the proof satisfies us in this case that the plaintiff is capable of performing that kind of work whether it consists in loading and unloading laundry machines and extractors, in handling an axe or a saw in clearing a right of way or in doing anything else that he has to so exert himself for, notwithstanding the loss of his finger. We can well understand that a brick or stone mason, as, for instance, the injured employee in the case of Jones v. International Paper Co., La.App., 11 So.2d 555, cited by counsel for plaintiff, and who had lost the use of the index finger on his right hand could not be expected to carry on his particular trade, thus becoming totally disabled within the contemplation of the statute. But the reasoning in that case cannot be applied in the case of an employee who has no special skill or training in any trade in which the use of any particular finger, and much less the middle finger of either hand, is involved.
In considering his demand, it may well be conceded that plaintiff does experience a feeling of sensitiveness in using his hand, but the fact is that he does not complain on that account of not being able to work. His complaint is that he is handicapped because of the missing finger and for that reason has slowed up in his work. We readily appreciate that an employee has been held, under the law, to be totally disabled from doing any work of a reasonable character when he can only perform his work with pain and suffering caused by his injury. See Carlino v. United States Fidelity Guaranty Co., 196 La. 400, 199 So. 288. In that case however the court uses the expression "great pain and suffering" which certainly is not the degree of pain plaintiff suffers in this case since he merely complains of a feeling of sensitiveness. A condition as slight as his appears to be does not justify the application of the rule invoked in his behalf.
The judgment appealed from which rejected the demand is, in our opinion, correct, and it is therefore affirmed.