Plaintiff in this case was formerly employed at Kean's Laundry in Baton Rouge. According to the allegations of her petition her duties required her to iron the cuffs and shoulders of shirts by placing them in certain machines used for that purpose. The machine used to iron the shoulders is described as half of a metal ball about the size of half of an average size pumpkin. It was kept at a high degree of heat by a lid which would clamp down over it. The machine for ironing cuffs seems to have been one of a similar pattern, which we would judge would be smaller. The machine was operated by merely pressing an electric button. The more delicate part of the work involved the stretching of the cuffs or shoulders of the shirt with both hands and arranging each part so that it would be perfectly ironed with all the wrinkles taken out.
Plaintiff alleges that on September 9, 1943, under instructions, she was substituting for an absent employee, and was engaged in ironing a stiff front formal dress shirt on a machine which operates very much like the one just described; that while she was placing the shirt in the machine, an inexperienced employee pressed the button which closed the lid down while she had her hand between the lid and the table of the machine and she was thereby severely burned. Her injuries are described as a crushed left thumb and also injuries to the second, third and fourth fingers of the left hand, necessitating the removal of her left thumb at the middle of the proximal phalanx, the stump of which has not properly healed and remains tender to touch and that it will so remain permanently. That there is also a claw like contraction of the left forefinger which prevents her straightening that finger and from completely closing it and that she will thus be permanently injured and disabled. *Page 522 
She alleges that because of her injury she has become totally and permanently disabled to use her left hand to do the delicate work she was performing and is therefore disabled within the meaning of the Compensation Law of Louisiana, Act No. 20 of 1914.
After alleging that she was paid compensation at the rate of $7.18 per week for a period of 25 weeks, and that the defendant has refused to pay her anything further despite her demand, she asks to recover compensation against the defendant, the employer's compensation insurance carrier, for 400 weeks because of her total and permanent disability, less the amount she has already received, together with the sum of $250 for medical expenses.
There seems to be no dispute about the nature of the plaintiff's work, nor is there any controversy over the amount of wages she was paid and on which her compensation would have to be determined, and the only defense presented by its answer seems to be that defendant's liability is for the loss of a portion of her left thumb only, all of which has been paid.
Before the case was tried, however, defendant filed a supplemental answer in which it alleged that since the filing of its original answer a medical report from Dr. James R. Godfrey shows that plaintiff lost more than one phalanx of her thumb and therefore she is entitled to 50 weeks compensation instead of 25 weeks as had been paid her. Liability was accordingly admitted for an additional 25 weeks at $7.18 per week, or a total of $179.50 plus $8.50 for costs of court incurred up to then, both of which amounts were duly tendered. Under a stipulation plaintiff accepted the $179.50 tendered in the way of additional compensation without prejudice to her right to claim the full amount demanded by her in her petition.
The case went to trial and the district judge awarded plaintiff judgment for further compensation in the sum of $107.70 representing, as he states, 50% of $7.18 for 30 weeks, for the injury to her left index finger. There was no proof of any medical expenses, therefore that demand was rejected.
Plaintiff took the present appeal. In their brief counsel for the defendant contend that the trial judge was in error in awarding the plaintiff extra compensation for any impairment to her left index finger as, they claim, she can perform the same work she did before she was injured. Nevertheless they did not answer the appeal and seem satisfied to let that award stand in the judgment.
Outside of the testimony of the plaintiff herself and that of a co-worker, which is not very helpful, and that of Mr. Wilbur H. Kean, all the testimony in the case consists of that of the doctors. Dr. T. Spec Jones, who attended the plaintiff at the time of her injury and who amputated her left thumb, was not called as a witness by either side, nor is there any report made by him filed in the record.
Plaintiff testified that she is unable to perform the kind of work she was doing at this ironing machine as it requires the use of both hands and a rather firm grip to hold the shirts, stretch them and place them in the machine. She complains further of tenderness and pain in the stump of her amputated thumb. She received a ninth grade education but has only done manual work since she left school. Besides working at the laundry she did general housework and at the time the case was tried was operating an elevator at the Heidelberg Hotel. She insists that because of her handicap she is unable to work at any of these jobs. She admits that one of the Keans who owns the laundry offered her her same job, but when she went to see about it she was told by the foreman, Mr. Lloyd, that he did not have time to talk to her, so she went back home. She however did not return and says that it was, because at the time, her hand was still swollen.
Referring to Mr. Kean's testimony with regard to taking her back, we may state that it is to the effect that he is willing to give her the same job she had or any other job at the same rate of pay. He states that he thinks she could operate the machine and that even though she would be slower in her work at the beginning because of her handicap she nevertheless would readjust herself within two weeks' time and be able to perform as well.
The first doctor who testified was Dr. Henry C. Hatcher, who says that it is his opinion that one suffering from an injury of the type of the plaintiff's could straighten out clothes and handle them in more or less a normal manner. He does state however that in this case motion in plaintiff's index finger is limited in the position of extension or straightening about 15 or 20% and on flexion or bending, it is limited *Page 523 
50%. He seems to be satisfied that plaintiff's complaint of pain is justified because in suturing the wound there was left a pin point area of tenderness indicating nerve stimulation.
Dr. Lawrence J. Kern gave it as his impression that at this time plaintiff has about a 25% total disability of the left hand. Any duties that require any sort of grasp or strength of grasp, she would not be able to do. She might be able to do housework which did not require any movements of the hand to any degree but any work at all requiring an accurate, constant use of the finer movements of the left index finger, she could not do with that hand. She cannot get full flexion of that finger. He states his opinion that she would not be able to do the same kind of laundry work as she did before as fast as she did. Rather positively he says: "She has a hand disability. There is no way of getting around that."
Dr. James P. Godfrey did not testify but his report was accepted by both sides in lieu of his testimony. In this report he says that there is nothing present to indicate plaintiff's justification of complaint of tenderness in the thumb. Flexion of all the digits of the left hand is probably normal but the index finger lacks about 25% of full flexion because of the thick scar near the palmer surface of the finger. "I do not believe the hand has been disabled for more than 10 or 15%," he says.
[1] Our conclusion from all the medical testimony is that the plaintiff has some slight disability of the left hand which we think might handicap her in performing the same kind of work which she was accustomed to doing at the laundry. We are firmly convinced however that she is not entitled to total permanent disability as is contended in her behalf.
Counsel for defendant rely to great extent on the case of Smith v. Travelers Ins. Co., La. App., 13 So.2d 81, which by strange coincidence, involves a plaintiff who worked in a laundry and who had suffered the loss of the middle finger of his hand. He also contended that his injury rendered him incapacitated from performing his work in the laundry, which contention was rejected. We do not think the case is authority however, for the reason that as shown by the proof, the kind of work he had to do, which was loading the extractors with clothes, did not require any particular use of the finger he had lost and it was shown that he had normal grip or grasp of the whole hand. In the present case it would seem that in the finer kind of work which this plaintiff had to do she is more handicapped by reason of the loss of flexion in her index finger as well as by the loss of her thumb. It may be that she could handle the shirts and grasp them tightly enough between that injured finger and the remaining stump of the thumb but we do not think that she could do it as efficiently as she did before she was injured.
There is therefore, as testified to by the doctors, a certain percentage of disability and the question which presents itself is whether her compensation should be based under the specific provisions of Subsec. 1 (d) 15 of Sec. 8 of the Act, as amended, which provides that in all cases involving a permanent partial loss of the use of function of a member, compensation shall bear such proportion to the amount named in the act for the total loss of such member as the disability to such member bears to the total loss of the member, or should it be based on the partial disability section of the act. Subsec. 1 (c) of Sec. 8. The trial judge based his decision on the case of Jones v. New Orleans Furniture Mfg. Co., La. App., 17 So.2d 847, in which the court allowed recovery under the first-mentioned provisions for a 30% permanent impairment in the function of a left eye. In the case of Barentine v. W. R. Aldrich Co.,20 So.2d 635, this court applied the other provisions of the statute to a case in which the injury was not unlike that in the present, and to a man who was classed as and did the work of a carpenter's helper.
We do not question the correctness of the decision in the case of Jones v. New Orleans Furniture Mfg. Co., supra, but doubt that it can stand as authority for the decision in this case. The plaintiff in that case was a colored man employed by the New Orleans Furniture Manufacturing Co. who sustained an injury while at work. He was temporarily disabled from performing work for 13 weeks, for which time he was paid compensation. It was long after his employer had stopped paying him that he brought suit to recover additional compensation claiming that vision in his eye had been impaired so that he was permanently and totally disabled, and therefore entitled to 400 weeks. He presented alternative demands: That if he *Page 524 
was not permanently disabled, then he should be awarded the specific benefits for the permanent loss of vision of his eye under subpars. 9 and 14 of the same section and if not under those provisions, then under subpar. 16, because the eye injury constituted a serious facial disfigurement. The claim for total permanent disability was not seriously prosecuted as it appeared that plaintiff had been and was still engaged, ever since the 13 weeks' period of compensation, in gainful employment, at better wages than he received before. The contention made for compensation because of facial disfigurement was also easily disposed of on the ground that if he was entitled to recover under some other specific provisions of Sec. 8 of the statute his claim had to be restricted to the particular provision that was applicable. It seems as though the issue resolved itself into one of whether he was entitled to the total loss of the use of the eye or whether he had only suffered an impairment of a certain percentage of vision in that eye. There was no question then of whether his injury affected his ability to do or perform his work and for that reason the case was properly decided under the provisions of Subsec. (d) 15 of Sec. 8.
[2] In the present case the issue seems to be strictly whether the injury sustained by the plaintiff has affected her capacity to work, either at the job she was performing when she was injured or, let us say, some other job requiring the full use and manipulation of her left as well as her right hand and therefore we think that it comes squarely within the principle of the Barentine case decided a few weeks ago and in which the precedent laid down in the case of Washington v. Holmes 
Barnes, Ltd., La. App., 4 So.2d 51 and Id., La. App.,5 So.2d 195 was followed. As long as the method applied in that case in trying to solve the intricate problem presented in cases of this character is not rejected by the Supreme Court, we have concluded to follow it as we think that it is the fairest and soundest disposition to be made of them.
There remains for us now to determine the percentage of impairment in the plaintiff's left hand because of her injury, in order to determine the amount of compensation she is entitled to under the partial disability provisions of the Compensation Act.
When Dr. Hatcher referred to a larger percentage of disability than the others, he had in mind, no doubt, disability to the left index finger alone. We do not think that he meant to convey the idea that the percentage of disability to the finger, in relation to the function which it performs with the other digits of the hand, was that great. That is what we must base the disability on. Dr. Kern seems to estimate the disability in that respect at about 25% and Dr. Godfrey at not more than 10 or 15%. A fair average, we would say, would be about 20%. But even at 25%, at the rate of pay which the plaintiff received, 65% of a 25% disability would bring the rate of compensation under $3, the minimum award which can be made under the Compensation Statute.
Therefore we have decided that the judgment should be amended and recast so as to award compensation as was done in the Barentine case at the rate of $3 per week for a period not to exceed 300 weeks less the amount which plaintiff has already received.
For the reasons stated it is therefore ordered that the judgment appealed from be and is hereby amended and recast so as to read as follows: It is ordered, adjudged and decreed that the plaintiff herein do have and recover compensation against the defendant at the rate of $3 per week for a period not exceeding 300 weeks, commencing September 9, 1943, less the sum of $359 already paid her, together with all costs of court, and that in other respects the said judgment be and the same is hereby affirmed. *Page 525