Plaintiff was injured on December 9, 1938, while driving a truck and making deliveries for the defendant wholesale company. The injury resulted when the truck which he was driving on one of his delivery trips turned over, pinning him under some part of the truck and causing a comminuted fracture of the humerus of his left arm, with detached fragments of the bone at the site of the fracture; also a comminuted fracture of the radius of the left arm which extended down into the wrist.
Plaintiff was paid compensation by the insurance carrier of the defendant on the basis of 65% of his weekly wage of $11 from the date of his injury for a period of 27 weeks, after which period he was discharged by defendants' physician and went back to work for the defendant company and received the same wages as he was receiving at the time of the injury. He was discharged by the defendant on September 16, 1939, and this suit was filed on November 14th following.
On July 6, 1939, some two or three weeks after he had been discharged by defendants' physician as able to return to work. and after he had resumed his job with defendant company, he and his employer and *West Page 52 
its insurance carrier filed a joint petition for a lump sum settlement on the basis of the payment by the defendant through its insurance carrier, Great American Indemnity Company, of $248.82, representing compensation on the basis of a 20% permanent disability of his left arm for a period of 173 weeks. In this joint petition and the annexed agreement attached thereto between the parties it is stated that the disability to plaintiff's left arm is fixed at 20%; that his weekly wages were $11; that the insurer had paid 27 weeks of compensation; that on the basis of 200 weeks allowed by law for the loss of an arm, the defendants were due plaintiff 20% of 65% of his weekly wage for the remaining period of 173 weeks, and that plaintiff agreed to accept and defendants agreed to pay the sum of $248.82 in full settlement without discount of the balance due for compensation on the above basis. In addition defendants were to pay all hospital and medical expenses amounting to $497.91. This joint petition was presented to the court and the proposed settlement was approved by a judgment and the amounts paid plaintiff in line with the agreed settlement.
This suit is to set aside the said lump sum settlement and recover compensation for total permanent disability on the basis of $13.25 a week instead of $11 a week. Plaintiff asks for judgment against his employer and its insurer in the sum of $4,725.63, being the amount of compensation due him, plus a penalty of 50%, and less the amount already paid him.
The defendants set up the validity of the lump sum settlement, deny that plaintiff was totally and permanently disabled and deny that they owe him any further compensation. The trial judge dismissed plaintiff's suit, from which judgment of dismissal he has taken this appeal.
It is alleged that the lump sum settlement is invalid for the reason that plaintiff's claim was discounted at a greater rate of interest than eight per cent per annum, contrary to subsection 9 of Section 8 of Act 20 of 1914, as amended by Act 242 of 1928, and for that reason the defendants have subjected themselves to the payment of one and one half times the compensation that would have been due had the settlement not been made as provided in said subsection. The reasons given for setting aside the settlement are: That his wages were $13.25 per week and not $11 per week; that he suffered total and permanent disability and not merely a 20% disability of the use of the left hand as set forth in the lump sum settlement; that the settlement was fraudulent in that he was informed by the defendants that he was getting the full amount allowed him by law, and they agreed to keep him employed at the same wages he was earning when injured; that this was not done, but he was discharged on September 16, 1939, because of his inability to discharge his duties properly on account of the condition of his arm.
Both plaintiff and defendants take the position that the settlement was a lump sum settlement under the above mentioned subsection and not a compromise agreement under Section 17 of said Act 20 of 1914, as amended, for the reason that there was no dispute between the parties as to the nature and extent of the injury to plaintiff's arm. However, the fact that plaintiff is now claiming that the settlement was made on a wrong wage basis and on an incorrect fixing of the nature and duration of the disability indicates that there was room for dispute between the parties on these points. But as both parties now take the position that the settlement was made on a lump sum basis, it is not necessary for the settlement to be set aside in order for the plaintiff to recover further compensation if he has proved that the nature of his injury and resulting disability justify awarding additional compensation. Taylor v. Lock, Moore Co., Ltd., 164 La. 577, 114 So. 163; Childers v. Roy O. Martin Lumber Co., La.App., 171 So. 484; Reid v. J.P. Florio Co., Inc., et al., La.App., 172 So. 572.
It is proper to state here that there is no evidence of fraud on the part of any one in the confection of the settlement approved by the court. All that plaintiff himself claims on this point is that he was told by an official of the wholesale company before the settlement was made that his job was there for him as soon as he was able to take it back. It is conceivable that plaintiff did expect to go back to work on his old job and did go back and work at the same wages for some three months. There is no evidence to indicate that plaintiff was promised a job for an indefinite time, regardless of the nature of his work.
The question then arises as to whether or not plaintiff has proved that by reason of the injury he is either partially or totally permanently disabled to perform work *West Page 53 
similar to that which he was performing at the time of the injury. We agree with the trial judge that the testimony does not show that he is totally and permanently disabled, but it does show that there is some slight impairment in his ability to perform the type of work in which he was engaged. All the medical testimony shows that while the fracture in his left arm had healed, yet there is an overlapping of some of the bone, with an angulation and slight impairment of the movement in the elbow and wrist. There is also some nerve involvement affecting the grip of the little and ring fingers of the left hand which somewhat impairs the use of the fingers in handling objects with the left hand. Practically all the doctors agree that there is a permanent impairment in the use of the left hand, the disability in the use of this hand being about 20%.
Dr. McHugh, produced by the defendants, testified that, in his opinion, plaintiff's ability to do manual labor is impaired to the extent of 20%. Dr. Robins, who treated plaintiff and testified for defendants, was of the opinion that plaintiff's left arm was disabled permanently to the extent of about 20% and that this would affect his capacity to work from 8 to 10%. Other doctors admit that there is an impairment to some extent in his ability to do manual labor, such as handling boxes, loading trucks, and doing other things of a similar nature requiring the use of both hands. The fact that plaintiff is not able to do the same type of work which he was doing before being injured is shown by the fact that the defendant, his employer, admitted that he was discharged for failing to do his work properly; that he slowed down and was not efficient. Plaintiff himself says that he could drive the truck, load and unload the merchandise, but that it took him longer to do the work than it did before he was injured.
We are of the opinion that the disability to plaintiff's left arm permanently affects his capacity to do manual labor, the only kind of work he is fitted to do and which he was doing when injured. He is not totally disabled from doing this kind of work as is shown by the fact that he admits that he can drive a delivery truck, load and unload merchandise, but that it takes him longer to do the same amount of work than it did before he was injured. He was passed for work at the Solvay Process Company by Dr. McHugh after his injury and worked for that company irregularly for several weeks at jobs requiring rather difficult manual labor and the use of both hands.
We think the permanent disability of 20% to do manual labor fixed by Dr. McHugh is fair and borne out by the other evidence in the record. It is true that modern industry is not looking for 75, 80 or 90% men, but where an employee is able to do a substantial part of his usual work after an injury, we do not think it is either the spirit or purpose of the compensation law to permit him to draw 65% of his wages for a period which might extend to 400 weeks and at the same time earn practically the same wages that he was able to earn before the injury.
The trial judge also found that plaintiff has a partial permanent disability, for he says: "As I see this case plaintiff's injury produced only a partial disability which I believe is permanent and that disability consists of a 20% loss of the use of his arm. It may be that by reason of the injury there is a corresponding general disability of 20%, but even so, I do not think he was entitled to compensation as for total disability."
We are aware of the fact that there are numerous cases holding that where an injury to a member of the body permanently disables an employee from doing the substantial and customary duties connected with his employment, he is entitled to compensation for total permanent disability under paragraph (b) subsection 1 of Section 8 of Act 20 of 1914, as amended, rather than under paragraph (d) providing for compensation for the loss of the member, or the loss or impairment in the use of a member. Among the most pertinent cases on this point are: Barr v. Davis Bros. Lbr. Co., Ltd., 183 La. 1013, 165 So. 185; Schneider v. Travelers Ins. Co. et al., La.App., 172 So. 580; Vaughn v. Solvay Process Co., La.App., 178 So. 241; and Stieffel v. Valentine Sugars, Inc., et al., 188 La. 1091, 179 So. 6. But in all these cases it was found as a fact that the injury to the member rendered the employee totally and permanently disabled from doing in a substantial and customary way the kind of work for which he was fitted by experience and training.
Paragraph (c) of the above mentioned subsection of the Compensation Act provides for compensation for an injury producing partial disability to do work of a *West Page 54 
reasonable character at sixty five per cent of the difference between the wages at the time of injury and wages which the injured employee is able to earn thereafter during the disability, not beyond three hundred weeks. This law is still on the statute books, and it applies to the disability of plaintiff in this case and should be given effect.
The wages earned by plaintiff after the accident for three months were about the same as those earned previously. However, after he was discharged in September, 1939, his work was not regular, not because he could not get work, but because, as he says, he did not have a regular job. In view of this situation, we think the difference in his wages before and after the accident will have to be determined on what he was earning before the accident and what he was able to earn thereafter. We know of no better way to arrive at his present earning capacity as compared with what he was earning before the accident than to take the extent of his incapacity of 20% which the evidence shows he has sustained. This seems to be the most equitable manner to arrive at the difference in earning capacity where the employee has not been employed for a sufficient time after the accident to make a comparison of his efficiency. See Jarrell v. Cumberland Telephone Telegraph Co., 7 La.App. 496.
Applying this method, plaintiff is entitled to recover 65% of 20% of the wages he was earning when injured, for a period not exceeding 300 weeks. Whether he was earning $11 per week as defendants claim, or $13.25 per week as plaintiff claims, in either event his compensation would be less than the minimum of $3 per week fixed by subsection 3 of Section 8 of said Act 20 of 1914, as amended. He is therefore entitled to recover compensation at the minimum of $3 per week for a period of not exceeding 300 weeks, less the 27 weeks for which he was paid full compensation; that is to say for 273 weeks at $3 per week, beginning one week after payments of total compensation ceased, subject to a credit of $248.82 paid him as compensation after that date and plus a credit of $247.91, the amount overpaid him for medical expenses, making a total credit of $496.73.
For the reasons assigned, the judgment appealed from is hereby annulled, avoided and reversed, and it is now ordered that plaintiff recover compensation from the defendants, Holmes 
Barnes, Ltd., and the Great American Indemnity Company, at the rate of $3 per week for a period not exceeding 273 weeks, beginning with the first payment due June 26, 1939, with legal interest on each payment from its due date until paid, subject to a total credit of $496.73, paid on July 6, 1939; that the defendants pay all costs in both courts.