FOURNET, Justice.'
 

 This is a suit by an employee to set aside the lump-sum settlement entered into between himself, his employer, and its insurer, with the approval of the court, on July 6, 1939, and to recover compensation against the defendants for total permanent disability, plus a penalty of 50%, to be paid in a lump sum, with legal interest, less the amount previously paid him. The matter is now before us on a writ of certiorari to review the judgment of the Court of Appeal for the First Circuit (4 So.2d 51) wherein the appellate court reversed the judgment of the lower court dismissing plaintiff’s suit and awarded plaintiff compensation at the rate of $3 a week for a period not to exceed 273 weeks, with legal interest (plaintiff having been paid full compensation for a period of 27 weeks), subject to a credit of $496.73, $248.82 being the amount paid plaintiff as compensation under the lump-sum settlement and $247.91 being the amount paid for medical expenses in excess of that authorized by law.
 

 In his petition the plaintiff alleged that the settlement entered into under the judgment of July 6, 1939, was null and void, having been made in contravention of the provisions of the Employer’s Liability Act, Act No. 20 of 1914, prohibiting lump-sum settlements at a greater rate of discount than 8% per annum for the reason that the settlement was based on the erroneous suppositions that plaintiff’s weekly wage was $11 when in fact it was $13.25, and that the plaintiff had suffered only a 20% disability of his left arm when in fact he was totally disabled, as well as on the fraudulent representation that the plaintiff was getting under the settlement the full amount allowed him by law and that he would be permitted to continue in his employment at the same wage he was receiving when injured.
 

 In their answer the defendants admitted they had entered into a lump-sum settlement with the plaintiff but denied there was any fraud connected therewith or that the plaintiff was totally permanently disabled. Further answering, the defendants denied plaintiff’s base pay was $13.25 a week, averring that he was paid at the rate of 250 an hour for 44 hours a week (8 hours a day for a 5%-day week) in accordance with the provisions of the Federal Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., which act requires that where an employee works in excess of the 44 hours a week provided by law, he must be paid time and a half for overtime.
 

 The Court of Appeal found as a fact, as did the lower court, that there was no evidence in the record sustaining the charge of fraud in’ the confection of the settlement sanctioned by court approval. Counsel for plaintiff evidently conceded this for we ■find in the opinion of the lower court the
 
 *792
 
 statement that this phase of the case was not even discussed by them in their brief. In plaintiff’s brief filed in this court in support of the application for a writ of certiorari, we find that counsel declare: “Applicant is before this Court on two major propositions of law, first that under the facts found here both by the Trial Court and by the Court of Appeal it was shown that applicant was permanently and totally incapacitated after the accident to satisfactorily do the work that he was doing as a truck driver when the accident occurred, and that he is thus entitled to compensation for permanent total disability, and secondly, and in the alternative, that if the compensation is to be figured on the basis of permanent partial disability then it should either be computed upon the actual difference in earning capacity before and after the accident or in any event, it should be figured at 65% of the earnings at the time of the accident for a period of 300 weeks, and that there is no remote sanction in the law to further reduce this 65% by relating it to the alleged degree of disability as was done here.”
 

 The Court of Appeal affirmed the lower court’s finding that the defendant was not permanently totally disabled to perform work similar in character to that performed by him at the time of the injury, which finding, in our opinion, is amply supported by the evidence.
 

 Both plaintiff and defendants say the settlement had between them in accordance with the judgment of the district court of July 6, 1939, was made in pursuance to subsection 9 of Section 8 of Act No. 20 of 1914, as amended, by Act No. 242 of 1928, the defendant contending that since the provisions of the act were fully complied with, such a settlement, in the absence of fraud, is binding on the plaintiff, fully discharging the employer’s liability under the act.
 

 As was pointed out when the case of Puchner v. Employers’ Liability Assurance Corporation, 198 La. 921, 5 So.2d 288, 292, was originally before us. “* * * Under subsection 9 (formerly subsection 8) of Section 8 of Act No. 20 of 1914, as amended, by Act No. 242 of 1928, where there is no dispute, the parties, by agreement, may have the amounts payable as compensation commuted to a lump sum settlement provided (1) the approval of the court is secured, and (2) the amount due is not discounted at a rate greater than 8 per cent per annum.
 
 * *
 
 *”
 

 The subsection above referred to authorizes the payment of compensation in a lump sum where there is no dispute between the parties, provided (1) the settlement L approved by the court as being in reasonable compliance with the provisions of the act, and (2) the amount due is not discounted at a rate greater than 8% per annum. When these conditions have been complied with, the act declares the liability “of the employer making such payment shall be fully satisfied; provided, that for injuries scheduled in paragraphs 1-d [loss of various members of the body] and 2 [for injury causing death within a year after the accident] of this section, no shorter term than therein set forth have been agreed upon.”
 

 
 *794
 
 The settlement in the instant case was based upon a joint petition of the plaintiff, George Washington, his employer, Holmes & Barnes, Ltd., and its insurer, the Great American Indemnity Company, properly verified by all of these parties, after the same had received full court approval. In the agreement annexed to the application it is stipulated Washington was injured on or about December 9, 1938, while performing his duties for Holmes & Barnes, Ltd., when a truck of the company overturned, a portion thereof falling on his arm and “causing a complete comminuted fracture of the left humerus at the junction of the middle and lower third, with an inward angulation and several detached fragments of the bone at the site of the fracture, lacerations, brush burns and possibly other injuries”; that at that time, and prior thereto, Washington’s weekly wage was $11, computed “on a basis of eight (8) hours per day, five and one-half (5%) days a week, his hourly wage being twenty-five (25^) cents. That sixty-five (65%) per cent of said weekly wage is seven and 15/100 (7.15) dollars.” Washington admitted that at the time the agreement was entered into he had fully recovered from all injuries received in the accident, other than a partial disability of his left arm, which was estimated in the agreement at a 20% disability, and that he had returned to work on June 19, 1939, doing the same kind of work as he had been doing previously, receiving therefor the same compensation. Washington accepted the payment of the lump sum under the judgment of the court “in full settlement and satisfaction of all amounts due or to become due to him as workmen’s compensation for his injuries and disability growing out of said accident.” In addition to this lump sum, which amounted to $248.82, the indemnity company also paid all medical, hospital, and surgical expenses incurred in connection with the treatment of Washington’s arm, amounting to $497.91.
 

 As disclosed by the record, this settlement was approved by the court after the judge had interrogated the plaintiff with reference to the proposed settlement and. had explained fully to him the purport thereof. The record further discloses that at the time of the confection of this settlement the plaintiff was actually in the employ of the defendant Holmes & Barnes, Ltd., doing the same work he was doing at the time of his injury and receiving the same wages therefor. He continued to do this work for the company without any complaint on his part until September 6, 1939, when he was discharged by his employer for the alleged reason that he was not doing his work properly and was “ratting” on the job. Subsequently, on October 20, Washington secured employment “as a casual laborer” with the Solvay Process Company, after having been examined by that company’s physician and certified as being able to do hard work. For these services he was paid at the rate of from
 
 40‡
 
 to 50^ an hour, depending upon the character of work he was doing. A review of the testimony will show that some of the work Washington did at the Solvay Company was more laborious than that done while he was in the employ of Holmes & Barnes, Ltd., and that he did this work to the entire satisfaction of his new employer. He continued
 
 *796
 
 with this company until he was fired on February 20, 1940, for breaking into the locker of another employee, in contravention of the express rules of the company.
 

 Under these facts we cannot say that the settlement of July 6, 1939, was not in reasonable compliance with the provisions of the Employer’s Liability Act. It appears, however, that the defendants have acquiesced in the judgment of the Court of Appeal, for they failed to make a timely application to this court for a writ to review the same. Consequently, they are without right to have the judgment changed or amended for their benefit. Ware v. Couvillion, 112 La. 43, 36 So. 220; Succession of Thomas, 114 La. 693, 38 So. 519; Black v. Louisiana Central Lumber Co., 161 La. 889, 109 So. 538; Foley v. National Life & Accident Insurance Co., 183 La. 49, 162 So. 798; Cryer v. National Life & Accident Insurance Co., 183 La. 67, 69, 162 So. 804; and D. H. Holmes Co., Ltd., v. Morris, 188 La. 431, 177 So. 417, 418, 114 A.L.R. 905.
 

 In our recent decision in the D. H. Holmes case, we said: “Where a writ of certiorari or review is granted at the instance of one of the parties to a suit, to consider a complaint of a judgment of the Court of Appeal, under the provisions of section 11 of article 7 of the Constitution, and of Act No. 191 of 1898, carrying out the provisions of article 101 of the Constitution of 1898, an opposing party to the suit, who has not applied for a writ of review, cannot have the judgment amended for his benefit. In such cases the judgment of this court will be confined to the complaint or complaints of the party or parties at whose instance the writ of review was granted.”
 

 According to the facts of this case, however, the award made by the Court of Appeal will not be disturbed.
 

 For the reasons assigned, the judgment of. the Court of Appeal for the First Circuit is affirmed, costs of this court to be borne by the plaintiff.