This suit was filed in November, 1942, by the plaintiff to recover compensation for total and permanent disability at the maximum rate of $20 per week for a period not exceeding 400 weeks, less a credit for two weeks' compensation already paid, and the further sum of $250 for medical expenses. The alleged injury occurred on September 30, 1942, and consisted of an injury to plaintiff's eye and left foot. The only dispute in the case is the nature of the injury and the extent of the disability resulting therefrom.
The trial judge found that plaintiff was totally disabled but the disability was not permanent. He rendered a judgment in favor of the plaintiff for compensation at the rate of $20 per week for a period not exceeding 300 weeks, less the amount of $40 already paid, plus the sum of $27 for medical expenses. Defendant appealed, and plaintiff answered the appeal and asked that the judgment be amended by increasing the number of weeks not to exceed 400 weeks.
In our original opinion rendered on February 3, 1944,16 So.2d 486, we amended the judgment by reducing the period of compensation from not exceeding 300 weeks, beginning September 30, 1942, less a credit of two weeks, to a period of 17 weeks, at the maximum rate of $20 per week. An application for a rehearing was filed, and plaintiff filed his army discharge showing that he was honorably discharged from the army on December 28, 1943, just a little over a month before our opinion was handed down on the first hearing. The reason for plaintiff's discharge given on the certificate is CDD, which it was contended means that he was unable to do duty. As it was contended that this discharge was based on a disability which plaintiff had prior to his induction and resulted from the accident on which this suit is based, we entered a decree on June 6, 1944, 18 So.2d 243, 246, setting aside our decree of February 3, 1944, and remanded the case "for the purpose of having taken and placed in the record all available testimony relating to the discharge of the plaintiff herein from the United States Army and such additional testimony as may be produced by either side regarding plaintiff's ability or disability to do and perform hard manual labor."
Additional testimony was taken in the trial court, and this evidence, together with the entire record in the case, has been sent back to this court on the order of the trial judge. The status of the case now is the same as it was when the appeal was first heard in this court, with the additional evidence before us — that is the judgment rendered by the trial judge in the first instance is before us for review on a rehearing of the whole case.
On the remand of the case the plaintiff placed in the record the following additional evidence: his army discharge, the testimony of G.W. Gabbert, the Veteran Officer of Calcasieu Parish, who explained the meaning of a CDD discharge; the testimony *Page 487 
of Dr. Wilson Morris who treated plaintiff in the middle of 1944, and the testimony of the plaintiff himself and that of Mr. C.H. Austin.
Gabbert testified that a CDD discharge is one that is given a soldier who has a disability which is noted at the time of induction, or which disability is discovered after induction; or, the disability which he had has been aggravated while in the service. We are not sure that this witness meant to testify that there could not be other grounds for a CDD discharge besides the ones he mentioned.
Plaintiff testified that he was inducted into service in August, 1943, after he had been rejected three times; that he began drilling and took some long hikes and his foot swelled and he was sent to the hospital at Camp Livingston where he stayed sixteen days; that he was later sent to New Orleans where he started drilling again and going on long hikes with a ninety pound pack and a six pound rifle when his foot swelled again, and he was again sent to the hospital where he stayed 68 days until they gave him his discharge. In other words, according to his testimony from the time he was inducted until he was discharged, he was in the hospital the greater part of the time on account of the condition of his foot. He says he had no accident of any kind while in the service. He went to see Dr. Morris after he got out of the army, and this doctor treated him by putting a bandage and a cast on his foot. His foot swelled up the last time in December, 1944 (five or six months before this testimony was taken). He states that he has been working for Mr. Austin since he got out of the army, pulling scales at the docks, which he says does not require him to walk or stand on his feet; that when he has a lot of standing and bending to do on his foot, it swells up and hurts; that he is making about $26 per week on the job at the docks.
Dr. Morris testified that he treated plaintiff in June and July, 1944; that plaintiff had a markedly swollen ankle, with some limitation of motion, and the ankle seemed to be thicker; that he put on a plaster cast and when he discharged plaintiff the swelling had left the foot and it had improved; that plaintiff could perform limited duty when he was discharged by the doctor.
Mr. Austin testified that he took plaintiff out to rope some cattle in December, 1944, and after he worked about three hours his left foot swelled up so he had to quit; that he has not seen his foot swell since that time; that plaintiff has been working for the Lake Charles Stevedores since he got out of the army, operating a weighing machine which only requires him to pull a lever; that the work requires no strain on his feet and a twelve year old child could do this work.
The record shows that plaintiff endeavored to secure the evidence of the army doctors, but was unable to do so.
The defendant again called Drs. Fisher, Holcombe, Stevens and McKinney, together with two eye specialists, Drs. Moss and Raggio (the latter not having testified on the first trial). The testimony of the two eye specialists, as well as that of some of the medical doctors, is to the effect that plaintiff has a slight impairment of vision in his left eye, but the evidence clearly indicates that this slight impairment would not affect plaintiff's ability to perform hard manual labor. It is clear to us that if plaintiff suffers any disability it results from the swelling and pain in his left foot on straining or exercising that foot.
On the remand Dr. Fisher testified that he examined plaintiff in March, 1945, and reiterated the opinion that he gave in the first trial, that is he could find nothing to cause pain and swelling in plaintiff's left foot and there was no swelling present when he examined him; that in his opinion, plaintiff is able to do hard manual labor. Dr. Holcombe did not see plaintiff any more after he saw him the day of the accident and of course he could add nothing to his previous testimony. Dr. Stevens examined plaintiff in February, 1945, and could find nothing wrong with his left foot, and he was still of the opinion that plaintiff was able to perform manual labor. Dr. McKinney only reiterated his previous opinion that the X-ray did not show any fracture in plaintiff's foot, and he saw nothing to prevent him from performing common labor.
On the first hearing of the case, we concluded that, since the medical testimony then in the record was unanimously to the effect that plaintiff was able to perform manual labor, the testimony of the plaintiff and some other lay testimony to the effect that he was not able to perform hard manual labor must yield to that of men versed in medical science.
A consideration of the additional evidence now in the record convinces us that plaintiff's ankle does swell and give him *Page 488 
some trouble after strenuously exercising his foot. It is clear that he was discharged from the army because of some physical defect, and while plaintiff was unable to secure the testimony of the army doctors to show the reason for his discharge, there is no reason to doubt his statement that his foot would swell when he went on long hikes and that was the reason he had to stay in the hospital for more than half the time he was in the army. Unless we are to disbelieve both Dr. Morris and Mr. Austin as well as plaintiff, the latter's foot was swollen in June and July and in December, 1944. It could hardly be believed that Dr. Morris would have treated this plaintiff and put a bandage and a cast on his foot if his foot was not then swollen as the doctor testified. Nor can we disbelieve Mr. Austin when he says that he saw plaintiff's swollen foot in December, 1944.
Our opinion is that plaintiff's foot would swell when he would stand on it for a long time and exercise it strenuously. It may well be that when defendant's doctors saw plaintiff there was no swelling at the time. Dr. Morris stated that the swelling would disappear when plaintiff rested his foot. The fact that plaintiff's foot swelled for several months after the accident on straining it and the fact that so far as the record shows his foot gave him no trouble before the accident leads to the inescapable conclusion that this swelling results from the severe injury which he received to his foot in the accident.
[1] Plaintiff is not totally disabled from doing hard manual labor; his ability to do manual labor is only impaired. We are familiar with those cases which hold that where an employee is unable to do in a substantial and reasonable manner work similar to that which he was doing when injured, he is to be compensated under the total disability clause of the Compensation Law. Act No. 242 of 1928, § 8, subd. 1 (b), p. 357. However, where his ability to do such work is only impaired or reduced and he is able to do in a substantial manner his former work with only a reduction in his earning capacity, he is to be compensated under the partial disability clause (Section 8, subsection 1 (c) of Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 357). This paragraph provides that where the injury produces partial disability to do work of any reasonable character the compensation shall be fixed at 65% of the difference in wages which the employee was earning at the time of the injury and what he is able to earn thereafter.
Plaintiff testified that he is earning about $26 per week in his present job. The defendant admits that he was earning $35 per week at the time of the injury, so that his earning capacity has been impaired to the extent of $9 per week. He admits that his ankle is not swollen all the time, and we are of the opinion that he is able to do manual labor of a reasonable character, with only a slight impairment of his earning capacity.
[2] In some recent decisions this court has expressed an intention to base compensation payments on partial disability where the evidence shows that the injured employee has only suffered an impairment or reduction in his earning capacity and the proof is in such shape as to show the degree of the disability or the loss in earning capacity and where the proof shows that the injured employee is not totally disabled from doing work of a reasonable character.
We began the application of this interpretation of the compensation law in the recent case of Washington v. Holmes 
Barnes, Limited, La. App., 4 So.2d 51, and Id., 5 So.2d 195, where we gave reasons for our ruling. Our ruling on this point was sustained by the Supreme Court. 200 La. 787, 9 So.2d 35. We followed and applied the same principle of interpretation in the later cases of Barentine v. W. R. Aldrich Co., La. App.,20 So.2d 635 and Williams v. American Mutual Liability Ins. Co., La. App., 21 So.2d 521.
[3] We think this is the proper method to determine the compensation which plaintiff should recover, and that he should receive only partial permanent disability after the expiration of the 17 weeks he was totally disabled as we found on the first hearing, this partial disability to be based on 65% of the difference of his earnings at the time of his injury and what he was able to earn thereafter (65% of $9, or $5.85 per week).
For the reasons assigned, it is ordered that the judgment appealed from be amended by fixing the compensation due by the defendant to plaintiff at the rate of $20 per week for a period of 17 weeks beginning on September 30, 1942, less the sum of $40 already paid, and further compensation at the rate of $5.85 per week after the expiration of said 17 weeks for a period not exceeding 300 weeks from the date of the *Page 489 
accident, with legal interest on all past-due payments from their respective due dates until paid; that in all other respects the judgment be affirmed, the defendant to pay all costs incurred in the district court. Both plaintiff and the defendant are reserved the right to apply for a rehearing.