FRUGE, Judge ad hoc.
This is a suit to recover compensation for total and permanent disability at the rate of $20 per week, not exceeding 400 weeks. The defendants are plaintiff’s employer and its liability insurance carrier, The Travelers Indemnity Company.
After issue joined there was tried on the merits wherein the District Court found for plaintiff for permanent partial disability and awarding judgment against the defendants at $7.15 per week for a period not exceeding 300 weeks from December 8, 1948, as well as for costs and expert fees. Defendants *100 have appealed, seeking to reverse the trial court judgment. Plaintiff answered the appeal in an effort to increase the amount of judgment to conform to his original demand and the prayer for total permanent disability.
We have been favored by a well-reasoned and able opinion by the trial court. We have come to the conclusion that the trial court judgment is correct, both as to the facts and as to the law applied. We discern no manifest error in the conclusions of the trial judge with respect to his finding on the facts and we will, therefore, not disrupt his judgment. This is particularly true with respect to the conflict in the testimony of the medical experts and doctors. It is evident that because of this conflict in the medical testimony that the trial judge gave credit to the plaintiff and his lay witness.
There is no dispute as to the accident and the way it happened and that there was an injury and that he was receiving $36 per week wages at the time and that the employer’s business was hazardous.
The plaintiff alleges in his petition that on June 17, 1948, while engaged in the course and scope of his employment he was standing on logs which were on a trailer and that the logs started rolling, throwing him to the ground and that one of them struck him, resulting in injuries to both of his legs.
There is no dispute that the plaintiff was engaged in the course and scope of his employment. The evidence shows that the plaintiff suffered a fracture of the fibula of his left leg, as well as a chip fracture of a small bone in the instep of his right foot, and a chip fracture of the bone in his right heel. He was hospitalized and a metal plate placed on his left leg. He was in the hospital for a period of about five weeks and thereafter he made visits to Dr. Geis-mar, defendants’ physician, for a period of some additional 20 weeks. He was finally discharged by the doctor as cured on' December 8, 1948, and was paid compensation up until that time. After his discharge he did work irregularly for a period of some 2% months, but in March of 1949 he secured employment with one Mr. Glockner at Mandeville, Louisiana, which consisted of manual labor at a salary of $25 per week since that date.
We agree with the trial judge that the plaintiff has established, with reasonable certainty, his claim. As a result of the injuries it appears that the plaintiff is suffering a myofibrositis of the musculature of both of his legs, which causes pain and suffering and a weakening condition which prevents him from doing work of any reasonable character.
At this point we desire to quote from the trial court’s opinion:
“Six doctors have testified in this case and, as is usual, there is a terrific conflict in the testimony. On the side of the plaintiff Doctors Maurer, Salatich and Cannon have testified that the plaintiff is suffering from myofibrositis, which is defined as an increase of connective or fiber tissue with degeneration of muscular tissue. Both Doctors Maurer and Salatich are orthopedic specialists, having had vast experience in said field, and they are both of the opinion that plaintiff is suffering from myofibrositis in the calf of his left leg as well as the thigh of said leg. Their testimony shows that the outer side of the calf of plaintiff’s left- leg is hard or firm rather than doughy (this being the condition of a normal leg)' and this hardened condition of the muscle of his leg is an objective symptom of myofibrositis. They attribute this condition to- trauma from the accident which occurred on June 17, 1948. Dr. Cannon corroborates these two doctors as to the calf muscle of plaintiff’s left leg and as to the anasthesia of his leg, from his left -knee to the ankle. All these doctors further testify that plaintiff complains of pain in his right foot when pressure is applied to his instep but their testimony does not convince me that plaintiff is actually suffering in his right foot.
“Three doctors have testified on the side of the defendants in this case, these being Doctors Geisniar, Schlesinger and Harrell. Only one of these gentlemen is an orthopedic specialist, namely Dr. Schlesinger. He is of the firm opinion that the plaintiff is not suffering from myofibrositis of his left leg and is of the further opinion that he has 'completely recovered from the injury and *101 is now able to perform his work ag well as ever. I note that this doctor had furnished a written report to the insurance company on April 29, 1949, in which he stated that the plaintiff walked into his office without a limp in either lower extremity. However, when testifying by deposition, Dr. Schlesinger testified that Sims walked into his office with a limp and the limp was not constant — sometime being on one leg and sometime on the other. To- my mind, this greatly affects the weight of this doctor’s testimony. Dr. Geismar, who treated the plaintiff for the defendants, likewise testified that the plaintiff had completely recovered from his injury and this doctor was of the opinion that no such condition as myofibrositis existed and, quite naturally, he testified that this plaintiff was not suffering from a condition which the doctor did not recognize existed. I might add that this doctor is not an orthopedic specialist and neither is Dr. Harrell, the last witness who testified for the defendants. Dr. Harrell was of the same opinion as Doctors Schlesinger and Geismar — that the plaintiff had fully recovered and was not now suffering from any disability.
“After a careful review of the testimony of all of these experts, and in view of the fact that Doctors. Maurer and Salatieh, who are orthopedic specialists, found objective symptoms of myofibrositis in the plaintiff’s left leg, I am of the opinion that plaintiff has not fully recovered from the accident and is still suffering a partial disability in said leg. The testimony of the plaintiff shows that when he works, which necessitates his standing, that his left leg becomes weak and hurts him. This testimony is corroborated by that of Cyril Marange, á fellow worker, who testified that plaintiff, on occasions would have to stop and rest and at several times he had noticed the plaintiff rub his leg.”
The trial judge further points out that this plaintiff is a man 38 years of age who has been a hard worker all his life, having worked for no other but the defendant employer prior to his injury, and goes on to point out that in his opinion the attempt to show him as a malingerer has failed. We conclude that the record bears out the opinion of the trial judge on that point.
The trial judge held that the plaintiff’s ability to do manual labor is only impaired and that he is therefore able to do, in a substantial manner, his former work with only a reduction in his earning capacity. He allowed him compensation under the partial disability clause of the Compensation Act, Section 8, subsection 1(c) óf Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357. The provisions of this paragraph provide that where the injury produces partial disability to do work of any reasonable character, then the compensation must be fixed at 65% of the difference in wages which the employee was earning at the time of the injury and what he is able to earn after said injury. While it is true there is no evidence to show what this plaintiff was able to earn for 2% months after his discharge, yet since that time (or from March, 1949) to the date of the trial in September, 1949, or a period of 6 , months, it is shown that he earned an average of $25 per week and since it is admitted that he was earning $36 per week at the time of the injury, then his earning capacity has been impaired to the extent of $11 per week. This view is in accordance with the interpretation of the compensation law in the following cases: Vilce v. Travelers Insurance Co., La.App., 24 So.2d 485; Washington v. Holmes & Barnes, Ltd., La.App., 4 So.2d 51, Id., La.App., 5 So.2d 195; Barentine v. W. R. Aldrich & Company, La.App., 20 So.2d 635; Williams v. American Mutual Liability Insurance Company, La.App., 21 So.2d 521.' ■
Accordingly, since.the difference in plaintiff’s wages which he was earning at the time of the injury and what he was able to earn thereafter amounts to the sum of $11 per week, then he is therefore entitled to recover 65% of $11, or $7.15 per week, for a period not exceeding 300 weeks from December 8, 1948, with legal interest on all past due payments from their respective due dates until paid. ■ ■
For reasons assigned the judgment of the District Court is affirmed.