110 So.2d 116

Charles A. BLADES, Individually and as Natural Tutor of the Minors, Rex Blades and Juan Blades, and Tink Oliver, individually and as Natural Tutor of the minor, Sammy Oliver,

v.

SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY.

No. 43594.

March 23, 1959.

Richardson & Richardson, Bogalusa,
Adams & Reese, New Orleans, for appli-
cant.

Grover L. Covington, Kentwood, for
plaintiffs-respondents.

McCALEB, Justice.

This is a joint suit for damages by
Charlie Blades and Tink Oliver for the
personal injuries they allegedly sustained
in an automobile accident on March 22,
1955, when the automobile of Blades, which
was being operated by his wife, collided
with a car driven by one Truett Lewis, who
carried automobile liability insurance with
the defendant, Southern Farm Bureau Cas-
ualty Company. Blades and his two minor
children, Rex and Juan, and Oliver and his
minor child, Sammy, were occupants of the
Blades car and plaintiffs have coupled with
their demand for their own injuries a
claim for the injuries allegedly sustained
by the minors, each father appearing as
natural tutor for his respective offspring.
In addition, Blades seeks recovery for dam-
age to his car.

It was alleged in the petition that, on
April 1, 1955, an adjuster representing the
insurance company, through fraud and
misrepresentation, prevailed upon plain-
tiffs to settle and compromise their claims
against defendant for the sum of $345;
that this adjuster secured releases from
them covering their individual damages and
the damages of their children and that these
releases should be set aside and annulled.

To this petition, the defendant interposed
exceptions of res judicata, estoppel and no
right or cause of action and, in due course,

a hearing was had thereon at which evidence was elicited on behalf of the opposing litigants, touching upon the factual issue of fraud raised by the petition as ground for setting aside the compromises. After considering this evidence, the trial judge, finding that plaintiffs had failed to establish their allegations, upheld the settlements and dismissed the suit.

Plaintiffs then appealed to the Court of Appeal, First Circuit, where the ruling of the trial judge that plaintiffs were bound by the releases, voluntarily executed by them, was affirmed as to their own personal claims for damages but the court set aside the judgment insofar as it pertained to the releases plaintiffs executed on behalf of their children. Being of the opinion that the articles of the Civil Code dealing with the tutorship of minors were applicable to the case, the court resolved that these releases were invalid in view of Articles 353 and 3072 of the Code which forbid a tutor of a minor from compromising the minor's rights without the authority of the judge.[1] See La.App., 95 So.2d 209. We granted certiorari at the instance of defendant insurance company to review this ruling.

At the outset, we note that counsel for plaintiffs, in his brief and oral argument here, is contending that the Court of Appeal erred in not sustaining plaintiffs' demand for the annulment of the compromises in toto on the ground of fraud, as alleged in their petition.

■ That phase of the case is not before us. A party who has not applied for a writ of review of a judgment of the Court of Appeal is considered as acquiescing in the judgment and cannot have it changed to the detriment of the adverse party when the case comes before this Court on a writ of review granted upon the application of the latter. D. H. Holmes Co. v. Morris, 188 La. 431, 177 So. 417, 114 A.L.R. 905; Cassar v. Mansfield Lumber Co., 215 La. 533, 41 So.2d 209; Speed v. Page, 222 La. 559, 62 So.2d 824 and May Finance Co. v. Nagy, 223 La. 816, 66 So. 2d 860. Consequently, the only issue presented for determination is whether the Court of Appeal was correct in concluding that the releases executed by plaintiffs for and on behalf of their children are null because plaintiffs did not obtain judicial authority to compromise the claims of the minors.

■ We think the Court of Appeal erred in basing its decision on the Articles of the Code dealing with tutorship, for the reason that no tutorship of the children can

---

1. The court also referred to R.S. 9:651 et seq., which dispense with the necessity of a family meeting provided for by Article 353 of the Civil Code and set up a new procedure for the handling of transactions involving minors and interdicts, under which approval of the court is required.

exist during the marriage, when the parents are not legally separated from bed and board.

The codal article governing this case is Article 221, which declares:

"The father is, during the marriage, administrator of the estate of his minor children and the mother in case of his interdiction or absence during said interdiction or absence.

"He or she shall be accountable both for the property and revenues of the estates the use of which he or she is not entitled to by law and for the property only of the estate the usufruct of which the law gives him or her.

"This administration ceases at the time of the majority or emancipation of the children, and also ceases upon judicial separation from bed and board either of the father from the mother or of the mother from the father."

This Article is found in Chapter 5— "Of Paternal Authority" of Title VII of the Civil Code which treats of the relation "Of Father and Child".

Article 353 of the Code, relied on by the Court of Appeal, is found in Chapter 1— "Of Tutorship" Section 11, "Of The Administration of the Tutor", of Title VIII dealing with minors, their tutorship and emancipation.

The Court of Appeal reached its conclusion without giving consideration to the codal articles dealing with paternal authority during the marriage and apparently assumed that the plaintiffs in this suit are tutors of their minor children. But it was mistaken in its assumption because the Civil Code, in providing for four types of tutorships, by nature, will, effect of law and appointment of the judge (See Article 247), necessarily excludes children of the marriage whose parents are living. Indeed, Article 250 of the Civil Code sets forth the circumstances which give rise to tutorship by nature, which occurs upon the death of either parent, or upon their divorce or judicial separation from bed and board. Tutorship by will, by effect of law, and dative tutorship are, of course, without pertinence here, as a casual examination of codal articles 257, 263 and 270 will readily disclose.

■ The right of the father as the administrator of the estate of his minor child to assume charge of and act freely with respect to the effects of the minor without the necessity of obtaining court approval of his administration is well established in our jurisprudence. The difference between the nature of this paternal authority and tutorship was clearly defined in the early case of Cleveland v. Sprowl, 1845, 12 Rob. 172, as follows:

"Now, it is well known, that no tutorship exists, during the marriage, over the children issued from it, but

that a child remains under the authority of his father and mother until his majority or emancipation. Civ.Code, art. 234. The father is, during the marriage, administrator of the estate of his minor children; he is accountable both for the property and revenues of the estates, the use of which he is not entitled to by law, and for the property only of the estates, the usufruct of which the law gives him; and such administration ceases at the time of the majority, or emancipation of the children. Art. 267. The natural tutorship only takes place after the dissolution of the marriage, by the death of either of the spouses, and belongs of right to the surviving one. Art. 268. Thus it is clear, that the legal mortgage resulting from the tutorship, is not applicable to the administration of the minor's property, given by law to the father, during the marriage. He is not a tutor; his duties and responsibilities are very different; and the law does not appear to have intended, that while the minor's estate remains under his father's administration during the marriage, his child should have a legal mortgage upon his father's property, as security for the said administration. * * *".

This case was quoted from with approval by the Supreme Court of the United States in Darlington v. Turner, 202 U.S. 195, 26 S.Ct. 630, 50 L.Ed. 992, where Mr. Chief Justice White, a former Justice of this Court, wrote a lengthy dissertation on the powers of a father as administrator of the estate of his minor child as distinguished from those of a tutor under the civil law. To the same effect is Snow v. Copley, 3 La.Ann. 610 and In re Monrose, 187 La. 739, 175 So. 475.

■ There is no provision of our law requiring the father, as administrator of the estate of his minor child, to obtain approval of a compromise he has made with a third party in satisfaction of his claim, for and on behalf of the minor, for damages for the latter's injuries occasioned by negligence. The only Article of the Civil Code which exacts court approval of the father's dealings as administrator applies in instances where he proposes to sell or mortgage the property of the minor. Article 222 declares, in substance, that property belonging to minors may be sold or mortgaged " * * * and any other step may be taken affecting their interest, * * *" but in such cases the father, as administrator, must pursue the same forms " * * * as in the case of minors represented by tutors, the father occupying the place and being clothed with the powers of the tutor". But this Article is without relevance to this case; it applies to the sale or mortgaging and similar transactions affecting the property of a minor. These are acts which, by their very

nature, extend beyond mere administration of the minor's property and it is probably for this reason that the Article was placed in the Code of 1870 (it was not contained in the Code of 1825). See Dauterive v. Shaw, 47 La.Ann. 882, 17 So. 345. Clearly, the prosecution or settlement of a claim for damages for personal injuries of the minor against a third person does not fall into the same category.

For the foregoing reasons, the judgment of the Court of Appeal is reversed insofar as it pertains to the compromises made by plaintiffs on behalf of the minors, Rex Blades, Juan Blades and Sammy Oliver, and the judgment of the district court is now reinstated and affirmed in all respects.

FOURNET, C. J., absent.

110 So.2d 119