134 So.2d 53

Mrs. Peggy Morgan PENNINGTON,
etc., et al.

v.

JUSTISS–MEARS OIL COMPANY,
Inc. et al.

No. 45446.

April 24, 1961.

On Rehearing Nov. 6, 1961.

Maurice J. Wilson, E. Gordon West, Baton Rouge, Leonard W. Richey, Jena, Blake West, Charles M. Lanier, New Orleans, Breazeale, Sachse & Wilson, Kantrow, Spaht, West & Kleinpeter, Baton Rouge, Gaharan & Richey, Jena, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendants-relators.

Kizer, Heaton, Craig & Cangelosi, Benton & Moseley, Baton Rouge, for plaintiff-appellee-respondent.

Edgar Corey, New Orleans, J. Minos Simon, Lafayette, Jackson & Hess, New Orleans, Camille F. Gravel, Jr., David A. Sheffield, Leonard Fuhrer, James S. Gravel, Alexandria, Bass & Lawes, Joe Bass, Jr., Lake Charles, Parker & Parker, A. B. Parker, Jena, L. E. Hawsey, Jr., Lake Charles, White & May, Baton Rouge, Brumfield & Organ, by Donald Organ, New Orleans, George T. Anderson, Jr., John S. Stephens, Coushatta, E. M. Nichols, J. Clem Drewett, Payton R. Covington, Lake Charles, Sandoz & Sandoz, by William C. Sandoz, Opelousas, Sanders & Long, by A. B. Parker, Jena, Johnson & LeBlanc, New Iberia, Wm. B. Baggett, Lake Charles, Guillory, Guillory

& Guillory, by Robert K. Guillory, Eunice, W. T. McCain, Colfax, Fusilier, Pucheu & Soileau, Ville Platte, Victor V. Blackwell, Covington, McKeithen, Mouser and McKinley, by Vinson M. Mouser, Columbia, Campbell, Campbell & Marvin, by John T. Campbell, Minden, Robert J. Mack, Hammond, Joseph A. Sims, Hammond, Gordon M. White, Baton Rouge, amici curiae, on rehearing.

HAMITER, Justice.

On August 16, 1957 C. B. Pennington, Jr. was accidentally killed at the site of oil drilling operations conducted by employees of the Justiss-Mears Oil Company, Inc. Surviving were his wife and their three minor children, two, three and four years of age.

Thereafter the widow instituted the instant suit to recover for herself and for the minors damages arising out of her husband's death, she alleging that it was occasioned by negligent acts committed in the drilling of the well. Named defendants were the mentioned drilling company and its liability insurer, the Hartford Accident and Indemnity Company.

The district judge concluded that the alleged negligent conduct on the part of employees of the Justiss-Mears Oil Company, Inc. solely caused Pennington, Jr.'s death and, accordingly, he awarded damages in amounts totaling $219,743.45 as follows:

To Mrs. Pennington individually for:

| | |
|---|---|
| Loss of support and maintenance | $150,000.00 |
| Loss of love and companionship | 10,000.00 |
| Funeral expenses | 1,243.45 |
| Total | $161,243.45 |

To the three minors for loss of love, companionship and guidance ........... $ 8,000.00 each or a

Total of ...... $ 24,000.00

To the two, three and four year old children, respectively, for loss of support and maintenance ...................... $ 12,000.00
11,500.00
11,000.00

Total ........ $ 34,500.00

From the judgment the defendants appealed to the Court of Appeal, they complaining mainly that the evidence disclosed no liability on their part and alternatively that the $150,000 awarded to plaintiff individually for loss of support and maintenance was excessive (the other amounts granted for the wife and three children were not questioned). Plaintiff answered the appeal requesting an increase in the awards for both herself and the minors.

Following an affirmance of the district court's judgment (123 So.2d 625) the defendants applied to this court for a writ of certiorari or review, their complaints being the same as those made to the Court of

Appeal. Our ruling on the application was: "Writ granted but limited to a consideration of the question of quantum as it relates to the item of support and maintenance for plaintiff individually. Otherwise, the application is denied."

Although plaintiff did not apply for a writ she suggests that we should examine the entire judgment and increase all of the awards. However, it has been held consistently that we cannot amend a judgment to the prejudice of one at whose instance a writ has been issued when the opposing litigant has failed to make application seeking such an amendment. Washington v. Holmes & Barnes et al., 200 La. 787, 9 So. 2d 35, Osborne v. Mossler Acceptance Company et al., 214 La. 503, 38 So.2d 151, Cassar et ux. v. Mansfield Lumber Company, Inc. et al., 215 La. 533, 41 So.2d 209, Blades v. Southern Farm Bureau Casualty Insurance Company, 237 La. 1, 110 So.2d 116, and McFarland et al. v. Illinois Central Railroad Company, La., 127 So.2d 183. Consequently, presented for our determination herein is whether the award of $150,000 made to plaintiff individually for loss of support and maintenance is excessive and, if it is, the proper amount to be granted to her.

Much discretion is left to the trial judge or jury in making an award of the kind under consideration. Nevertheless, when made it is subject to review by the appellate courts and should be changed when there appears to have been an abuse of the mentioned discretion or if it has been arrived at by the application of legally unsound principles. Brown v. S. A. Bourg and Sons, Inc. et al., 239 La. 473, 118 So.2d 891 and McFarland et al. v. Illinois Central Railroad Company, supra.

The instant case was tried before the judge only. And he, in fixing the challenged award for the wife's support and maintenance, stated: "Our State courts have established a system of calculation which appeals to me to be reasonable and safe to follow. Marler v. State [La.App.], 78 So.2d 26; Duree v. State [La.App.], 96 So.2d 854; Stephens v. Natchitoches School Board [La.App.], 110 So.2d 156. This method allocates to the widow one-half of the husband's prospective earnings for a period equal to his life expectancy, discounted at 5%. Under the present day retirement plans in many walks of life, it is reasonable to fix that period equal to the remainder of the work span, say 30 years at the age of 65 in this case, rather than for the entire life expectancy. Mr. Pennington's average net income during four and two-thirds years preceding his death was $21,551.77.

"Taking into consideration that Mrs. Pennington has no community ownership or interest, and that if her husband were living she would have no hope of inheritance, it is my firm conviction that it is conservative to assume that her husband would con-

tribute to her maintenance and support the sum of $10,000.00 per year for 30 years. This sum discounted annually at 5% gives a total of $153,724.66. I will allow for this item $150,000.00." (The observation concerning Mrs. Pennington's having no community interest has reference to the fact that plaintiff and decedent had executed a pre-marital agreement in which the former renounced "the dispositions of the civil law of Louisiana which establish a community of acquets and gains between husband and wife." However, inasmuch as awards of the instant nature are not based on a widow's vested interest in community property, as will be hereinafter indicated, we deem the circumstance of the pre-marital agreement unimportant.)

In approving the district court's award the Court of Appeal observed, among other things, that " * * * we cannot say that the trial court erred or abused its discretion in allowing the widow a recovery for the loss of her reasonably to be expected support based upon an annual valuation of support at $10,000 per year over 30 years, discounted to present cash value. * * *"

■ But the method or system of using almost entirely such mathematical formula in calculating the support element of damages, as well as the Court of Appeal decisions in which it was developed (they are relied on by the district court, Court of Appeal and plaintiff herein), was specifically denounced by us in McFarland et al. v. Illinois Central Railroad Company, supra, wherein we said: " * * * This court on several occasions has expressed disapproval respecting the use of such a formula in awarding damages * * *." [127 So.2d 187]

One of the decisions on which the last quoted observation was based was Brown v. S. A. Bourg and Sons, Inc. et al., supra. Therein, the widow did not rely on a mere gratuitous assumption allocating one-half of her husband's annual income to her, but she attempted to show approximately what he had actually contributed for her support prior to his death. After concluding that the annual contribution had been about $500, the district judge proceeded to project that figure into the future based on the husband's life expectancy of twenty years and arrived at an award for loss of support in the amount of $10,000. But on the appeal, with respect to the method so used, we stated: "The district judge was in error in computing the loss of support by multiplying the average annual contribution of the decedent to the support of his wife by the number of years of the life expectancy of the decedent. He made no allowance for discount on the advanced payments. *There are likewise other factors to be taken into consideration.* * * *

"*The monetary damages resulting from loss of support cannot be calculated with mathematical exactitude.* They are specu-

lative in nature and as in the case of damages for loss of love and companionship, mental anguish and other damages of that character, much discretion must be left to the judge or jury.

*"Considering all of the circumstances of this case,* we believe an allowance of $6,000 for loss of support is ample. * * *" (Italics ours).

The Bourg and McFarland cases (as well as the authorities cited therein) make it clear that in fixing a loss of support award for the widow the court endeavors to determine what she might reasonably have expected to receive from her husband in the future, it realizing all the while that the proper amount cannot be computed with mathematical exactitude or on any scientific basis, and that the "most that the courts can do in such case is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to both litigants and not unduly oppressive to either." Dobyns v. Yazoo and Mississippi Valley Railroad Company, 119 La. 72, 43 So. 934, 937. The husband's earning capacity and age, it is noted, are but two of the many factors to be considered in determining the amount of the loss.

In this connection we observe that there appears to be no reasonable basis for a gratuitous assumption in any case that a husband would contribute one-half of his earnings to his wife for her personal needs and use. Particularly does this seem true when there are young children of the marriage. Moreover, numerous other circumstances might exist to prevent such a contribution, even if the husband were disposed to make it. For example, there could be dependent parents (to whom a duty of support is owed—Revised Civil Code Article 229), needy collaterals, burdensome obligations which existed before the marriage, expenses for serious and lengthy illnesses, etc. Incidentally, we note, just as we noted in the McFarland case, supra, that herein no evidence whatever was adduced to show approximately what plaintiff had received from her husband during the existence of the marriage either for household purposes or for her own personal use.

The record in the instant cause discloses that the decedent, who was 35 years of age at the time of his death on August 16, 1957, began his business career in 1949 after graduating with a degree in business administration from Southeastern College at Hammond, Louisiana. With respect to his subsequent earnings apparently he kept no regular account books, and the facts concerning them were developed almost entirely from the testimony of his father (C. B. Pennington) and from income tax returns filed by him or on his behalf (together with some work sheets made in connection therewith) for the years 1953

through August, 1957. No earlier tax returns were introduced.

The father, who was a successful oil operator, testified that he had started out his son as an independent lease broker and that the latter used his office as a base of operations. Between 1949 and the latter part of 1952 the son (in such capacity) obtained for him a number of lease blocks, and for the services thus rendered he paid 50 cents per acre or a total of between $10,000 and $20,000. Subsequently, blocks of some 37,000 acres in five parishes were assembled for him by decedent; and therefor the latter, instead of being compensated on a cash basis, received by assignment ⅛th overriding royalty interests in the leases obtained. However, it does not appear that at the time of the son's death such overrides had any great value. In fact, on decedent's estate tax return all were valued at only $2,500. Also it was established by the testimony of the father that he had drilled some twelve or thirteen wells at various locations on the last mentioned acreage, and that all were unproductive with the exception of one—a small gas distillate well that was shut in and which furnished no revenue.

True, the father entertained the view that the services of the son in obtaining the leases on the 37,000 odd acres were worth at least $2.50 per acre when rendered and that, hence, in excess of $101,000 had been earned thereby. But there was no showing of any previous understanding between the Penningtons as to how much the cash value of such services would be or of any reason for an increase in the worth of decedent's work from 50 cents to $2.50 per acre. Apparently the trial judge was unimpressed by such testimony respecting the cash value of the mentioned services, for in arriving at decedent's annual earnings he gave no effect to it.

The father further testified that his son performed similar services for other persons and for some oil companies. However, the record does not disclose what compensation, if any, was paid therefor.

On the other hand it was conclusively shown that in 1952 the decedent furnished to the father information respecting an available "farm out" project in what became known as the Lobdell field in West Baton Rouge Parish; and acting upon it the latter was able to negotiate successfully the "farm out" from the Humble Oil Company, as well as to obtain a drilling contract with Circle Drilling Company, which proved highly profitable in that therefrom a total of four producing oil wells eventually resulted.

The first of such wells was completed in the latter part of 1952, and shortly thereafter decedent was assigned a one-fourth interest in the "farm out" lease as compensation for furnishing the information about the project. The remainder of the lease

was owned in the proportion of one-half by the father and one-fourth by Circle Drilling Company; however, all interests, including that of the decedent, were subject to a $\frac{1}{32}$nd override in favor of the Humble Oil Company.

According to the record the decedent's net cash income from January 1, 1953 to the time of his death (approximately four and two-thirds years), almost all of which was derived from the four wells on the above discussed Lobdell field "farm out" lease, was as follows: 1953—$40,571.69, 1954—$39,691.50, 1955—$20,474, 1956—a loss of $12,475, 1957 (eight months)—income of $12,312.73. Averaging these figures over the mentioned four and two-thirds years an annual net cash income of $21,551.77 is suggested for that period.

On the assumption that decedent would have contributed approximately one-half of his annual net cash earnings to his wife had he lived the trial judge used the figure of $20,000 (slightly less than the amount shown above), multiplied one-half of it by decedent's working life expectancy of thirty years, then discounted the total of $300,000 at 5% per annum to arrive at his award of $150,000 made to plaintiff individually for loss of support and maintenance. But, as pointed out above, the judge's relying entirely on such mathematical formula was improper.

Moreover, his error was compounded by the use of the discussed net cash income, as a basis for the award, in view of its nature. As aforeshown it came primarily from oil produced under the "farm out" lease in the Lobdell field, and obviously the same amount of earnings from that source could not have possibly continued for a period of 30 years. In fact, the record discloses that each year after discovery of that field there was a marked decrease in its productivity. Further, William G. Blackwell, a geologist and petroleum engineer who was called as an expert by plaintiff, testified that the four wells from which the income of decedent was mainly derived would be entirely expended within from two to six years from the date of his death. The expert also said that decedent's share of the total future production which could reasonably be expected from the Lobdell field had a net worth, as of the time of his death, of approximately $66,000. Therefore, we must hold that the trial judge abused his discretion in assuming that the income used as a basis for the award in question would continue for a period of 30 years.

In this court the defendants, to quote from their brief, say: "Relators do not deny that the task of computing an amount to be awarded for loss of support is both difficult and unpleasant, being as it is fraught with many incongruities, uncertainties and imponderables. They do not deny the necessity, in such cases, of resorting to some reasonable measure of dis-

cretion in determining the amount to be so awarded. But relators do not admit that these discretionary powers of a court are absolute or without limit and that the results achieved by a court can lawfully be at variance with or contradictory to the evidence before it. * * * Relators agree that the death of C. B. Pennington, Jr. was both untimely and a tragic and lamentable affair and if Justiss-Mears Oil Company negligently caused the death of this young man, as has been found by the lower Courts, they are prepared to pay such damages as are its natural consequence. But relators earnestly submit that those damages should only be such as are the normal, logical result of their misdeed. * * *" And in their oral argument here defense counsel have suggested $30,000 as a fair and proper award for plaintiff's loss of maintenance and support. However, in arriving at this figure they afford no value whatever to the above discussed overrides acquired by decedent in acting as a lease broker for his father. While their potential value cannot be determined definitely such overrides should be considered as representing a basis for possible future earnings of the decedent. The fact that he elected to accept and gamble with them, instead of requesting cash for the services rendered, could have no effect on their worth. At the time of the rendition of such services he was receiving substantial

revenues from the four producing wells drilled under the "farm out" lease and perhaps did not then need additional cash.

Considering all of the pertinent circumstances shown by the record we have concluded that the granting of $40,000 to this plaintiff for the loss of maintenance and support would provide reasonable and adequate compensation for her and not be unduly oppressive to the defendants. Consequently, there must be a reduction in the total award heretofore made to plaintiff individually from $161,243.45 to $51,243.45.

For the reasons assigned the judgments of the district court and of the Court of Appeal are amended by reducing the total amount awarded to plaintiff individually from $161,243.45 to $51,243.45; and, as thus amended, the judgments are affirmed. All costs are to be paid by the defendants.

HAWTHORNE and SANDERS, JJ., dissent with written reason.

SUMMERS, J., dissents.

HAWTHORNE, Justice (dissenting).

I do not agree that the award to the widow for loss of maintenance and support should be decreased from $150,000 to $40,000.

As I read the Court of Appeal's opinion, that court recognized that damages of this

nature cannot be calculated with certainty, and that appellate courts cannot prescribe any rigid formula for calculating the element of support in damages in cases such as this. That court did not use a formula although the trial judge did. The Court of Appeal simply took into consideration all of the factors present in the instant case, and then concluded that the trial judge had not abused his discretion in making the award. La.App., 123 So.2d 625.

I think the Court of Appeal was entirely correct in considering the life expectancy of the spouses and the annual earnings of the deceased and in reducing to its present worth the sum to which plaintiff was entitled.

The award in this case was reduced by the majority of this court principally on the basis that the deceased's income was derived primarily from the production of oil in the Lobdell field, and that income from this source would cease within two to six years after his death, when the oil production from that field would be exhausted. To me this is an unsound basis for reducing the award.

There is no question that the deceased was successful in the oil and gas business. His average monthly royalty checks at the time of his death were more than $2,000, and he was the owner of a ⅛ overriding royalty interest in over 37,000 acres of land. He left an estate which was valued for federal estate tax at more than $153,-000.

When the majority reduced the award because the husband's main source of income, the Lobdell oil field, would soon be exhausted, it must have assumed that he would have remained idle the rest of his natural life and would have received no income from any other source, in spite of the fact that when he died, he had for some time been a successful operator in his chosen line of work.

In making an award in a case such as this the chief element to be taken into consideration is the wife's loss of financial assistance for maintenance and support occasioned by the husband's death. To say that the wife under the facts of the instant case has been deprived of only about $1,000 a year over the 30 years of her husband's working life expectancy seems to me to be unrealistic, but this is exactly what the majority decided when it awarded her only $40,000 for loss of maintenance and support.

SANDERS, Justice (dissenting).

I fully agree that the assessment of damages for loss of support is not an exercise in pure mathematics based upon an inflexible formula. It requires the application of sound judicial discretion to the multitude of circumstances disclosed by the record. Brown v. S. A. Bourg & Sons, Inc. et al.,

239 La. 473, 118 So.2d 891; McFarland et al. v. Illinois Central Railroad Company, La., 127 So.2d 183.

In the fixing of damages, much discretion is left to the trial judge or jury. It follows from this that the trial court should not be reversed on the issue of quantum unless there is an abuse of discretion. LSA–C.C. Article 1934; McFarland et al. v. Illinois Central Railroad Company, supra.

The evidence in the instant case shows that the deceased was a young businessman with a life expectancy of 40 years. He had been highly successful in the oil business. His cash income had averaged more than $21,000 per year. At the age of 35, he had already amassed an estate with a gross valuation for federal estate tax purposes of $280,679.48 and with a net valuation of $153,161.08.

After considering the actuarial and other evidence, the trial judge concluded that an award of $150,000 to the widow for loss of support was proper. The court of appeal tested the award by the principles announced by this Court in Brown v. S. A. Bourg & Sons, Inc. et al., supra, and found no abuse of discretion.

I am likewise convinced from a consideration of all of the relevant factors that there has been no abuse of discretion by the trial court. In my opinion, the controlling principle in this case is that if the end result is proper and within the range of sound discretion, the mere reference to a formula by the trial judge does not vitiate the award. Therefore, I respectfully dissent.

On Rehearing.

SUMMERS, Justice.

In our reconsideration of this case on rehearing, we again subscribe to the pronouncements of the majority opinion, except that we find the amount awarded there somewhat inadequate under the circumstances. An award of $85,000 to this plaintiff for the loss of maintenance and support would be more consonant with the facts and circumstances recited in our original opinion and all other matters revealed by the record.

Accordingly, the judgments of the District Court and of the Court of Appeal are amended by reducing the total amount awarded to plaintiff individually from $161,243.45 to $96,243.45; and, as thus amended, the judgments are affirmed. All costs to be paid by defendants.

HAMITER, J., concurs in part and dissents in part, he being of the opinion that the judgment originally rendered here shall be reinstated and made final.

HAWTHORNE, J., concurs in the decree.

SANDERS, J., concurs with written reasons.

McCALEB, J., dissents in part being of the opinion that our original allowance provides just compensation to the widow for maintenance and support.

HAWTHORNE, Justice (concurring in the decree).

The members of this court are sharply divided on the question of what amount should be awarded the plaintiff in this case for loss of maintenance and support. Three of the justices believe that $85,000 is adequate, two consider this sum excessive, and one other justice and I believe that the circumstances of the case justify a larger award. I have signed the opinion awarding $85,000 only so that the court can render a decision and bring this case to a conclusion. Accordingly I concur in the decree.

SANDERS, Justice (concurring).

The reconsideration of this matter on rehearing has not altered the views which I expressed in dissent on the original hearing. However, I am mindful of the necessity of the concurrence of a majority of the members of this Court in an award. The award made in the majority opinion on rehearing represents a more realistic consideration of the loss of support by the widow. Accordingly, I concur in the decree.