266 So.2d 918 (1972)
Hubert Joseph LeBLANC, Individually and as Administrator of the minors Cornel H. LeBlanc and Natalie M. LeBlanc
v.
The ESTATE of Anthony Joseph Pierre BLANCHARD et al.
No. 4641.
Court of Appeal of Louisiana, Fourth Circuit.
September 27, 1972.
Rehearing Denied October 17, 1972.
Writ Refused November 21, 1972.
*920 Robert D. Edwards, Nathan Greenberg, of Greenberg, Cohen & Dallam, Gretna, for plaintiffs-appellees-appellants.
Jesse S. Guillot, New Orleans, for Louisiana Dept. of Highways.
M. N. Grossel-Rossi, Michael A. Britt, of Leach, Grossel-Rossi & Paysse, New Orleans, for Home Indemnity Co.
Joseph F. Grefer, Gretna, for Mrs. Joseph Blanchard.
Before LEMMON, GULOTTA and BOUTALL, JJ.
LEMMON, Judge.
This appeal involves two wrongful death suits based on an accident in which Anthony Joseph Blanchard and his sister, Mrs. Hubert Joseph LeBlanc, drowned in his automobile in Goose Bayou in Jefferson Parish.
On behalf of himself and his minor children, LeBlanc filed suit against Blanchard's insurer and his estate and against the Louisiana Department of Highways. He alleged that Blanchard operated the vehicle negligently and that the Department failed to adequately warn motorists traveling Louisiana Highway No. 45 of the curve and abrupt turn onto the high bridge over Goose Bayou, although numerous deaths by drowning had previously occurred when cars ran into the bayou at the point of the approach to the bridge.
Blanchard's mother filed a separate suit against the Department and against Mrs. LeBlanc's insurer, alleging that she was the driver of the vehicle at the time of the accident and that she was negligent in that capacity. The suit against the insurer was compromised and dismissed prior to trial. Pending trial, Blanchard's mother died, and her surviving descendants were substituted as parties plaintiff.
The cases were consolidated and tried on the merits. The trial court found that no negligence had been proved on the part of the driver, whether it was Blanchard or Mrs. LeBlanc, and dismissed Blanchard's insurer from the suit. However, the court found that the Department was negligent and rendered judgment accordingly in favor of plaintiffs. The Department appealed in both cases. The LeBlancs also appealed on the issue of quantum only. Because the LeBlancs acquiesced in the dismissal of Blanchard's insurer and his estate, the liability of those parties is not before us on this appeal.
Blanchard, who resided in Oklahoma, had been visiting with the LeBlancs for several days. In mid-afternoon of September 18, 1963 he and Mrs. LeBlanc stopped at her husband's barber shop in Westwego and stated that they were going to Lafitte to purchase sea food and to check on a deep sea fishing trip. LeBlanc testified that his wife had been to Lafitte three or four times previously. The only other trial witness that saw them alive thereafter was the operator of the Lafitte Yacht Pen, who sold sea food to them. He testified that the couple left the Yacht Pen about dusk, after spending 1½ to 2 hours there. The Yacht Pen was 1½ miles south of the Goose Bayou Bridge, which was on the route of the return trip to Westwego.
*921 The next morning area residents observed an oil slick on Goose Bayou and noticed that a railing next to the south approach to the bridge had been knocked down. Upon probing the waters with a pole, they located the Blanchard car and notified the police. The car was raised by divers, and the bodies were recovered.
The investigating officer testified that there were no traffic control indicators or warnings signs by the approach to the bridge, except for a battery-operated flashing sign before the approach. However, the flashing light had not been operative for two or three months prior to the accident. He had previously complained to Department crews working in the area about the inoperative sign and the need for other signs, and had on occasion himself replaced the battery on the flashing sign. He further testified that the weeds along the highway were seldom cut and partially obscured the highway signs that were posted in the area.
Other witnesses vertified the lack of warning signs on the day of the accident, and testified that signs were posted immediately after the accident. They further verified the condition of the weeds.
One resident testified that 18 to 20 cars had previously run into the bayou at this point and that he had traveled to Baton Rouge after every accident and registered complaints with the Department about the lack of adequate warning signs and about the weeds.
On the other hand, Department officials testified that the area was adequately posted with proper warning signs and that the weeds were cut regularly. Photographs taken on September 20 and 23, 1963 showed the following signs:
Prior to the bridge approach
1. SPEED LIMIT 30 M.P.H.
2. BRIDGE 500 FEET AHEAD.
3. CURVE15 N.M.P.
At the approach
1. ARROW (pointing in the direction of the curve)
2. Ten black and white delineators (narrow, vertically striped signs)
Department officials testified that their records showed that no sign posting was done in the area between September 15 and September 25, which would imply that photographs taken between these dates showed the signs as they existed on the day of the accident. However, one witness observed, and we agree, that some of the delineators would necessarily have been knocked down on the day of the accident by the Blanchard car, which knocked down a railing behind the delineators. Yet the photographs taken shortly after the accident showed all of the delineators in place. Also, the flashing sign did not appear in any of the photographs, although numerous witnesses testified that the sign was there at the time of the accident.
The trial judge found on the conflicting evidence that the Department had failed to utilize a procedure for properly posting and maintaining warning signs at the time of the accident. On appellate review of the record, we find that there was sufficient evidence upon which the trial judge could base this finding, although there was considerable evidence to the contrary. We cannot conclude that he committed manifest error in accepting one version of the testimony and rejecting the other.
We next reach the question of whether the Department breached any duty by failing to post and maintain warning signs. It is the duty of the highway authorities, in the exercise of reasonable care, to warn motorists of dangerous conditions on the highways. Hall v. State Through Department of Highways, 213 So.2d 169 (La.App. 3rd Cir. 1968). We must therefore determine whether or not the condition in the present case was so dangerous as would require highway authorities *922 to post warning signs in order to make the highway safe for motorists exercising ordinary care.
The dangerous condition in the present case, especially after dark, is amply demonstrated by the photographs and the testimony. An aerial photograph shows that the road was straight for a considerable distance prior to the approach to the bridge from the south. As a motorist approached Goose Bayou, neither the bayou itself (being lower than the road) or any structure indicating the presence of a bayou would be picked up by his headlights. At the bayou a motorist (if not warned) was suddenly confronted with a sharp left turn and an ascent onto the bridge, as shown in this photograph (Exhibit Defendant Highway-9):

*923 Furthermore, as the trial judge observed, the shelled area to the right of the bridge gave the appearance to an approaching motorist of a continuation of the roadway. An unwarned motorist traveling in the dark could easily become confused and, if he left the highway at this point, would immediately plunge into the bayou.
Another fact indicating the hazardous nature of this situation was the frequency of accidents there. Documentary evidence established that four motorists had drowned in vehicular accidents at this point in the five years prior to this accident. Several area residents testified that motorists frequently failed to negotiate the turn and plunged into the bayou.
Presumably on the basis of the high accident rate, the Department in 1962 ordered the reduction of the speed limit from 45 to 30 miles per hour for a distance of 0.14 miles south of Goose Bayou. But this order served no useful purpose unless a sign notifying motorists of the reduced speed limit was posted and maintained. Most of the witnesses testified that no such sign existed at the time of the accident.
We conclude that there existed at the point of the accident an unusual and hazardous condition, which was in the nature of a trap to motorists not warned of the danger. The highway was thus unsafe for motorists using ordinary care. Failure of the Department to warn motorists of this situation constituted actionable negligence which caused this accident.
On the issue of contributory negligence, the burden of proof is on the Department. There were no skid marks or scattered shells or other physical evidence to indicate any negligence on the part of the driver. Neither was it established that either Blanchard or Mrs. LeBlanc was familiar enough with the area that he or she should have known of the dangerous conditions in the absence of warning signs. Where there are no witnesses or other evidence to show any act of negligence, it is presumed that the decedent acted with ordinary care for his own safety. LeJeune v. State Through Department of Highways, 215 So.2d 150 (La.App. 3rd Cir. 1968).
We therefore conclude that the trial judge correctly rejected the Department's plea of contributory negligence.

QUANTUM
LeBlanc seeks an increase in the $30,000.00 award, which consisted of $10,000.00 to him and to each of his two children.
After his wife's death, LeBlanc changed his living and work habits in order to better care for his minor children. He attempted to fulfill as best he could their need for a mother.
In considering an award for loss of love and affection in the wrongful death of a spouse, a court should consider the closeness of the relationship that had existed between the spouses, the length of the continuous relationship, and the common interests, as well as the deceased spouse's participation in family activities, devotion to and interest in the family community, and disposition and ability to render care, affection, assistance and advice.
The LeBlancs had been married for 17 years and had resided continuously together. Mrs. LeBlanc had attended to the care of the children while her husband worked as a barber, and shortly before her death had begun a wig business which was somewhat akin to her husband's occupation.
Mrs. BeBlanc was 38 years old at the time of her death and had a reasonable life expectancy of more than 30 years.[1] We believe that an award of $10,000.00 is grossly inadequate to compensate LeBlanc for his loss of the love, affection, companionship, society and association that he *924 could reasonably have expected from his wife, had she not been killed because of the Department's negligence. Under the facts and circumstances we set the award to the widower at $30,000.00.
The award of $10,000.00 to the 15 year old son is within the range of the wide discretion vested in the trial judge. C.C. art. 1934(3). However, we believe that a six year old girl's need for a mother's moral and physical guidance, training and care is substantially greater and accordingly increase that award to $15,000.00.
Funeral expenses in the amount of $1,333.00 were adequately proved and should be included in the judgment. Plaintiffs are entitled to collect this amount, although the proceeds of insurance policies paid all but $67.00. Hall v. State Through Department of Highways, supra.
The cause of Mrs. LeBlanc's death was listed as asphyxiation due to drowning. She undoubtedly sustained some amount of conscious pain and suffering during the last minutes of her life, since this type of death is slow and not instantaneous. Physical evidence indicated that she struggled to escape from the car. Her husband's petition sought an award for this item of damages, and plaintiffs are entitled thereto under C.C. art. 2315. However, because of the lack of specific proof of the amount of such suffering, we will set the award at $2,000.00. Hall v. State Through Department of Highways, supra.
For these reasons, the judgment of the trial court is amended to increase the awards to Hubert Joseph LeBlanc,[2] individually, from $10,000.00 to $31,333.00, and as administrator of the estate of his minor child, Natalie M. LeBlanc, from $10,000.00 to $15,000.00. The sum of $2,000.00 is further awarded Hubert Joseph LeBlanc, individually and as administrator of the estate of his minor children, Cornel H. LeBlanc and Natalie M. LeBlanc, for the damages sustained by Mrs. Nita LeBlanc, prior to her death. As amended, the judgment is affirmed.
Affirmed.
NOTES
[1] See R.S. 47:2405.
[2] While the appeal was pending, LeBlanc died, and his son was substituted as plaintiff individually and as tutor of his minor sister.