333 So.2d 383 (1976)
Helen Marie Reed AYMOND et al., Plaintiffs-Appellees,
v.
STATE of Louisiana Through DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 5453.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1976.
Rehearing Denied June 30, 1976.
Writ Refused September 29, 1976.
*384 Philip K. Jones, Norman L. Sisson, Robert J. Jones, Johnie E. Branch, Jr., William J. Doran, Jr. by William J. Doran, Jr., Baton Rouge, for defendant-appellant.
Gist, Methvin & Trimble by H. B. Gist, Jr., Mansour & Davis by Alfred A. Mansour, Alexandria, for plaintiffs-appellees.
Before DOMENGEAUX, GUIDRY and BERTRAND, JJ.
BERTRAND, Judge.
The above numbered and entitled matter and the case entitled Aymond, et al. v. State of Louisiana, through the Department of Highways, No. 5454 of the docket of this court, were consolidated for trial in the lower court, 333 So.2d 380. We decide both of these cases today. The facts and the law common to both are set forth herein, however, those facts and questions of law peculiar only to the case of Beatrice Griffin Aymond, et al. versus State of Louisiana, through the Department of Highways, supra are set forth in a separate opinion which we likewise hand down this date.
These consolidated death actions arise out of a one-car accident which occurred when an automobile driven by Gerald Aymond and occupied by the driver and his uncle, Everett Aymond, failed to make a curve and ran off a bridge spanning a body of water known as the "Chatelain Lake Canal." The bridge spanning the canal referred to is located on Louisiana Highway 457 in Rapides Parish.
Suit No. 5453 is that of Mrs. Helen Marie Reed Aymond, widow of the driver, Gerald Aymond, on behalf of herself and the four minor children of her marriage to Gerald Aymond. Suit No. 5454 is that of Mrs. Beatrice Griffin Aymond, widow of the guest passenger, Everett Aymond, on behalf of herself and as natural tutrix of her two minor children who were the stepchildren of the deceased. Everett Aymond never adopted his stepchildren. The State of Louisiana, through the Department of Highways, is made defendant in each of the suits.
In each suit the defendant filed answer denying any negligence on its part and alleged that the accident was caused by the negligence of Gerald Aymond, driver of the automobile. In suit No. 5453 defendant pleaded contributory negligence on the part of Gerald Aymond in bar to the recovery of damages by plaintiffs. In suit No. 5454 defendant filed an exception of no right of action to the claim on behalf of the stepchildren as well as an exception of res judicata based upon an unrestricted release which Beatrice G. Aymond executed in favor of the insurer of Gerald Aymond. In addition, in the latter suit, the highway department filed a third party demand seeking contribution from Helen Marie Reed Aymond, individually and as natural tutrix of her minor children, in the event it be determined that the fatal accident was caused by the joint negligence of the department and Gerald Aymond.
After trial of these consolidated actions the trial court found that the accident was caused solely by the negligence of the highway department. Accordingly, in suit No. 5453 judgment was rendered in favor *385 of Mrs. Helen Marie Reed Aymond for $80,000.00 and in favor of each minor child for $30,000.00 for loss of love, affection, mental pain, humiliation and suffering; in favor of Mrs. Aymond and the four minor children for loss of support in the amount of $600,000.00; and, in favor of all plaintiffs for pain and suffering prior to death in the amount of $7,500.00 and the sum of $2,905.75 for funeral expenses. In suit No. 5454 judgment was rendered sustaining the exception of no right of action dismissing the demand of the stepchildren; dismissing the exception of res judicata; dismissing the department's third party demand for contribution; and, awarding to plaintiff, Mrs. Beatrice Aymond the following monetary damages, viz: $25,000.00 for loss of support, $60,000.00 for mental pain, anguish, humiliation and suffering, $7,500.00 for pain and suffering of Everett Aymond prior to his death and the sum of $1,999.20 in funeral expenses.
The Department of Highways has appealed from these judgments. Plaintiff, Helen Marie Aymond has answered the appeal asking that the amounts awarded be increased. Plaintiff, Beatrice Griffin Aymond has likewise answered the appeal asking that the awards to her be increased and the stepchildren be awarded damages for loss of love, affection and support.
The issues in these consolidated appeals are:
1. Was the Department of Highways guilty of negligence which proximately caused the accident?
2. Was Gerald Aymond guilty of negligence which caused or contributed to the accident?
3. If there is liability on the part of the Department, were the damages awarded excessive?
4. What is the effect of the general release granted to Gerald Aymond's insurer by Beatrice Aymond?
5. Are the stepchildren of Everett Aymond entitled to recover damages for his wrongful death?
The issues numbered 1 and 2 are common to both suits and will be fully treated in this opinion, however, issue number 3, insofar as it applies to Beatrice Aymond, and issues numbered 4 and 5 are discussed and disposed of in the opinion which we this day render in the suit which bears out docket No. 5454.

WAS THE DEPARTMENT OF HIGHWAYS GUILTY OF NEGLIGENCE?
Plaintiffs contend that the defendant's negligence consists in its having designed, created and maintained a dangerous condition or "trap" on a state highway and in its failure to erect and maintain proper and adequate signs etc. to warn motorists of such dangerous conditions. The trial court so held.
The record in this case reflects that the history of construction and the physical appearance of the bridge over "Chatelain Lake Canal" and the highway approach to that structure as they existed on the date of the accident," i. e., December 29, 1973 to be as described in the written reasons of the trial judge which we adopt as our own:
"Louisiana Highway 457 is a blacktop two-lane highway which traverses from Latanier to Lecompte, Louisiana. In 1953 a 5.5 mile section of it was resurfaced by the Highway Department and a bridge spanning the Chatelain Lake Canal was lengthened. The road-way has an overall width of 26 feet with two blacktop lanes 10 feet in width each, with shoulders 3 feet wide on each side. At the time of the event of these lawsuits, the speed limit was 60 mph. At the time of construction, the roadway was placed in the Class 6 category in accordance with the then existing Highway Department's design standards. *386 The area in which this highway is located is rural, although the highway does connect two major highwaysLouisiana Highway 1 and U. S. 71. Trees and brush have grown up in the fence rows adjacent to the highway and onto the highway right-of-way itself.
Approximately 5 miles from Latanier, going toward Lecompte, the highway crosses the Chatelain Lake Canal. During 1953 the Canal was widened and excavated. In connection with this work the bridge across the Canal had to be lengthened, and an additional 19-foot span was constructed by the Highway Department onto the north end of the bridge. The bridge itself is made of treated timber and rests upon piling driven into the ground. Its overall length after the most recent addition is 155 feet, and each span is approximately 19 feet long. The width of the roadway between the wheel guards on the floor of the bridge is 17 feet 9 inches.
At the time of the construction in 1953, the road itself was not rerouted. The bridge was simply extended into the then existing roadway and the overall result is that the bridge is straight but constructed in a curve. With the addition of the 19-foot span, the curve is even more pronounced. Approaching from the Latanier side going toward Lecompte, the road curves to the right. After crossing the bridge, the road continues to curve to the right.
Approaching the bridge from the Latanier side, the view of it was completely obstructed because of trees and brush growing along the adjacent fence rows and on the highway right-of-way. There were no signs or warnings along the roadway indicating the existence of this bridge, only a curve sign with a 30 mph speed advisory sign attached to it, which was located some 384 feet north of the bridge ahead of the curve going into it. At the place where the curve sign is located, the road actually veers slightly to the left and then proceeds to turn right. The centerline of the highway was marked with double yellow striping ..."
In addition to the above physical characteristics the evidence reflects the presence of wing spans or guard rails on the north end of the bridge which "take off" at an angle from the right and left corner of the bridge. The right wing span as it leaves the corner of the bridge is immediately adjacent (less than 12") to the edge of the hard-surfaced roadway and is so located as to require a motorist proceeding north onto the bridge to turn slightly left and then sharply to the right. In this latter connection the trial court observed:
"Only by executing this maneuver could a motorist approaching from the north get onto the bridge and remain in his lane of travel."
Six days previous to the Aymond accident, as a result of another accident, the left wing span or guard rail on the north end of the bridge was completely knocked away. In addition a portion of the left guard rail above the bridge floor was knocked down, however, this portion was partially reattached or pulled up by persons unknown. It is clear from the evidence that the Highway Department made no repairs to the bridge following the accident of December 23rd and prior to the Aymond accident on December 29th. The Department disclaimed any knowledge of the earlier accident and urges that the bridge was not repaired and signs were not placed to warn of the bridge damage because of this lack of notice. The trial court presumably held that the Department had knowledge, actual or constructive, of the bridge damage and failed within a reasonable time to repair such damage or to warn the motoring public of the additional hazard created by the bridge damage, i. e., the complete absence of the left wing span and the severe damage *387 to the left guard rail. Mitchell Guy, an area resident, testified that he called the Department's district headquarters following the accident of December 23rd and reported the accident and bridge damage. Mr. Guy could not pinpoint the day on which he made this call, however, he was certain that it was previous to the Aymond accident. His testimony was corroborated by the testimony of his wife. In addition, the record reflects that on the 26th and 28th days of December, 1973, highway maintenance crews worked on the 5.5 mile stretch of road where the bridge was located for a total of eleven hours. The evidence also shows that the accident of December 23rd was investigated by a State Trooper. Although there is no positive evidence in the record that the Department received timely notice of the bridge damage of December 23rd, we conclude that there was sufficient evidence in the record to support the trial court's finding of notice actual or constructive, and a failure to repair or warn within a reasonable time. We cannot conclude that the trial judge committed manifest error in reaching this factual conclusion.
There were no witnesses to the accident of December 29th. We can conclude from the record that in the early morning hours on that day Gerald Aymond, picked up his uncle, Everett Aymond, as the two were to go on a duck hunt. Gerald was driving a 1972 Chevrolet automobile belonging to his employer, Central Louisiana Electric Company. The Aymond automobile proceeded along Highway 457 going toward Lecompte from Latanier. From the physical facts evident at the scene it can be determined that as the Aymond automobile rounded the curve the driver applied his brakes leaving some 30 feet of skid marks and then the car jumped over the downed left guard rail into the canal and both men were killed.
It is well settled that the Department of Highways has a duty, in the exercise of reasonable care, to post and maintain adequate signs to warn motorists of dangerous conditions which exist on the highways. Hall v. State through the Department of Highways, 213 So.2d 169 (La.App. 3rd Cir., 1968); LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La.App. 4th Cir., 1972, writs refused November 21, 1972); Von Cannon v. State through the Department of Highways, 306 So.2d 437 (La.App. 3rd Cir. 1975, writs refused March 21, 1975). In Von Cannon, supra, this court in speaking to this duty stated:
"The Department of Highways has the duty to maintain state highways in such a condition that they will be safe for the ordinary motorist using reasonable care under the circumstances. LSA-R.S. 32:2; McCullum [McCallum] v. State, Department of Highways, 246 So.2d 46 (La.App., 3rd Cir. 1971); Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App., 3rd Cir. 1963). This includes the duty of providing adequate warnings of and safeguards against dangerous conditions in the highway. There is no hard and fast rule as to the types of warnings of safeguards. Warnings should be sufficient to alert the ordinary, reasonable motorist, having in view the probable traffic, the character of the road and the use reasonably to be anticipated, Christ v. State Department of Highways, 161 So.2d 322 (La.App., 3rd Cir. 1964). Safeguards should be commensurate with the danger."
As before noted the trial court held that a patently and obviously dangerous condition existed on the highway at the point where the accident happened, which was in the nature of a "trap" and that the Department was negligent in failing to post and maintain sufficient and adequate warnings to apprise a reasonably prudent driver of such condition. The trial judge reached this conclusion having found that:
(a) The view of the right side of the bridge from the curve and speed advisory sign was completely obstructed by trees and underbrush. The view to the *388 left, at dark, would be limited and was nonexistent on the morning of the accident because of the bridge damage which occurred on December 23, 1973.
(b) The location of the straight bridge in the curve, with the right guard rail in such close proximity to the traveled portion of the highway requires that the motorist veer slightly to the left and then turn sharply to the right in order to enter the bridge in the proper lane of travel.
(c) The curve sign was located in such close proximity to the bridge, i. e., 384 feet, that the motorist was at the bridge before realizing its presence.
(d) The testimony of local residents confirmed the happening of numerous accidents at the bridge site.
(e) There were no warning signs or devices posted anywhere along this roadway indicating this dangerous condition, other than the curve and speed advisory sign.
In addition to the factual findings of the trial court which we have summarized, we note that the evidence indicates that only the most experienced and expert drivers were able to negotiate the curve onto the bridge and remain in their proper lane of travel at the posted speed advisory.
Our examination of the entire record in this case in light of the well settled principal of appellate review as recently enunciated in the case of Canter v. Koehring Company, 283 So.2d 716 (La.1973) prompts us to conclude that there existed at the site of this accident a patently and obviously dangerous condition and that the Department failed in its duty to adequately and sufficiently caution of this dangerous condition, which failure constituted actionable negligence which caused this accident.

WAS GERALD AYMOND GUILTY OF CONTRIBUTORY NEGLIGENCE?
The Department contends that the decedent was guilty of contributory negligence. As aforestated there were no eye witnesses to the accident. There is no evidence in the record that the decedent was traveling at too great a speed or that he was not keeping a proper lookout. It is clear from the record that he was not familiar with this stretch of the Louisiana Highway system. The trial court determined that the Department failed to bear its burden of proving the facts which justify application of the special defense of contributory negligence. We discern no error in this conclusion. See LeJeune v. State Department of Highways, 215 So.2d 150 (La.App. 3rd Cir., 1968, writs refused January 24, 1969); Callahan v. Town of Bunkie, 287 So.2d 629 (La.App. 3rd Cir., 1973, writs refused March 8, 1974); LeBlanc v. Estate of Blanchard, supra.

QUANTUM
The remaining issue for determination in this appeal is whether the awards made by the trial court are excessive or inadequate. The defendant contends that the awards are excessive; the plaintiffs seek to have such awards increased.
As heretofore stated the trial court made the following awards to plaintiffs:
(1) To Mrs. Helen M. Reed, widow of Gerald Aymond, the sum of $80,000.00 for the loss of love, affection, mental pain and suffering.
(2) To each of the four minor children the sum of $30,000.00 for the loss of love, affection mental pain and suffering.
(3) To Mrs. Helen Aymond, individually and as natural tutrix, for loss of support the sum of $600,000.00.
(4) To Mrs. Helen Aymond, individually and as natural tutrix, for conscious pain and suffering of Gerald Aymond prior to his death the sum of $7,500.00.
(5) Funeral expenses in the amount of $2,905.75.
*389 In approaching a review of the awards made in this case we are guided by certain well settled principles applicable to the appellate review of damages. The rule of appellate review as it applies to awards of general damages was rather recently set forth in the case of Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) as follows:
"The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review, having in regard also that the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, including that of residual pain. The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages."
With particular regard to a damage award for loss of support the rule is as announced by former Chief Justice McCaleb in the case of Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968):
"Then, too, consideration must be given to the settled jurisprudence of this Court that allowance of monetary damages for loss of future earnings (or support of dependants in case of death) cannot be calculated with mathematical exactitude; that they are speculative in character and the `... most that the courts can do ... is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to both litigants and not unduly oppressive to either.' Dobyns v. Yazoo & M. V. R. Co., 119 La. 72, 43 So. 934. See also Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183, 87 A.L.R.2d 246; and Pennington v. Justiss-Mears Oil Company, 242 La. 1, 2, 134 So.2d 53."
We first consider the award made to Mrs. Aymond and her four children for loss of love and affection.
Gerald Aymond was 37 years old at the time of his death. He and Helen Reed were married on September 6, 1957 and had four children of their marriage, the oldest of whom at time of trial was 15 years. Gerald and Helen were very happily married. According to Mrs. Aymond theirs was a perfect marriage. Their family was extremely close knit and enjoyed doing things together. In short, all of the evidence is to the effect that the deceased was a fine man, a conscientious father and a good husband. It goes without saying that no sum of money can adequately compensate Mrs. Aymond and her four children for their great loss.
Able counsel for defendant argues that the award under consideration is excessive being greatly disproportionate to similar awards. We must confess that the award in this case is considerably higher than that which we have found in other cases, except for the case of Cacibauda v. Gaiennie, 305 So.2d 572 (La.App. 4th Cir. 1974), however, considering the lack of factual similarity of this case and others we cannot say that the trial court abused its great discretion. Finding this award by the trial court to be neither excessive nor inadequate we will affirm same.
We next consider the award made to Mrs. Aymond and her children for loss of support.
As before noted, Gerald Aymond was 37 years old at the time of his death. He had a life expectancy of 33.5 years and a work *390 life expectancy of 25.6 years. He was a graduate of Louisiana Tech University and held a degree in Petroleum Engineering. At the time of his death he was employed by South Louisiana Production Company, a subsidiary of Central Louisiana Electric Company, as a Vice President in charge of production at an annual salary of $19,400.00. Mr. Gale Galloway, the president of Southern Louisiana Production Company, testified that he had made a definite commitment to promote Mr. Aymond to the head of production and exploration. Upon a poll of the Board of Directors, all members had approved Mr. Aymond for the promotion. Had he lived, Aymond would have received a salary of $40,000.00 per year, together with an incentive bonus amounting to two (2%) per cent of all production.
Dr. Herbert Hamilton, Ph.D., testified as an expert actuary. Dr. Hamilton computed the economic loss suffered by Mrs. Aymond and her children and reached the conclusion, by application of various mathematical formulae, that the Aymond family suffered a loss of $949,130.00. (He did not consider the 2% incentive bonus.) Defendant offered no expert testimony to counter that of Dr. Hamilton, nor did they seek to challenge his method of computation.
The trial judge found as a matter of fact that Gerald Aymond was looking forward to an increase in salary from $19,400.00 to $40,000.00, and apparently accepted the opinion of the actuary, Dr. Hamilton, with regard to the loss of support. We quote from his reasons:
"At the time of his death, Gerald Aymond was employed by South Louisiana Production Company and Louisiana Intrastate Gas Company, which are subsidiaries of Central Louisiana Electric Company. Mr. Galloway, the President of the companies, also testified that he knew Gerald Aymond personally from working with over a long period of time and considered him a very outstanding man and most competent petroleum engineer. He had recently taken a straw vote of the Board of Directors of the company, and all of them had agreed to place Gerald Aymond in charge of the production and exploration for the company. In this capacity he would have earned the sum of approximately $40,000.00 per year, plus other incentive bonuses.
Dr. Herbert Hamilton, an expert actuary employed by the plaintiffs, using working life expectancy tables from the Department of Labor, as well as other mathematical formulae, theorized that the economic impact of Gerald Aymond's death was somewhere in excess of $1,000,000.00. In fixing quantum for loss of support, the court is not to be bound by mathematical formulae as such things only serve as guideposts and checkpoints in detecting the reasonableness of the award. See Tillman v. Canal Insurance Company [La.App.], 305 So.2d 602, Casibauda [Cacibauda] v. Gaiennie [La.App.], 305 So.2d 572. Considering all of the evidence of this man's actual earnings at the time of his death, his potential for earnings, his education and background, standing in the community, and the declining value of the dollar, it is the court's opinion that an award of $600,000.00 is adequate to compensate Mrs. Aymond and the children for the loss of support of her husband, Gerald."
While it is true that the $600,000.00 awarded for loss of support exceeds the awards made in other Louisiana cases, this, in itself, does not constitute an abuse of discretion. The case of Williams v. Harvey, 328 So.2d 901 (La.App. 4th Cir. 1976), reiterates the general rule that, "prior jurisprudence exerts no absolute control over an award of damages made by the trier of the case and is simply a guide in evaluating whether the trier's discretion is abused." In Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971), the Supreme Court, quoting from Ballard v. National *391 Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964), cautioned appellate courts against "fix(ing) the amount of [an] award solely to maintain uniformity of awards." In referring to another Supreme Court case, Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), the Court in Miller again set forth the principle that, "the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration." The facts and circumstances relied on by the trial judge in the instant case amply justify his award. We should not tamper with an award of general damages unless an abuse of trial court discretion is clearly demonstrated by the record.
We finally consider the award to plaintiffs of $7,500.00 for the pain and suffering sustained by Gerald Aymond prior to his death. Counsel for defendant urges that the award is improper because there is no evidence on which to base a conclusion that decedent consciously suffered any predeath pain. In support of this assertion counsel refers us to Addison v. Travelers Insurance Company, 281 So.2d 805 (La.App. 1st Cir. 1973). We acknowledge that this is the holding in Addison and its progeny therein cited. However, we choose to follow the reasoning in the cases of Hall v. State, through the Department of Highways, supra, and LeBlanc v. Estate of Blanchard, supra, which allowed damages for predeath suffering under factual circumstances similar to those in the present case.
Our Louisiana courts have made varying awards for this item of damages, the highest being $2,500.00 LeBlanc v. Estate of Blanchard, supra; Hall v. State, through the Department of Highways, supra; Johnson v. State Farm, 303 So.2d 779 (La.App. 3rd Cir. 1974). While we feel that the $7,500.00 awarded in the instant case may be high, we do not choose to substitute our opinion in this regard for that of the trial judge. The reasoning used by this court in refusing to reduce the award for loss of support is equally applicable here. Furthermore, it should be noted that the Court in Wiggins v. Lane, 298 F.Supp. 194 (E.D.La.1969), refused to disturb a jury award of $10,000.00 for conscious pain and suffering before death where the decedent suffered for a period of two seconds.
There is no dispute concerning the amount awarded for funeral expenses, i. e., the sum of $2,905.75 and such award is affirmed.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
GUIDRY, J., dissents in part and concurs in part and assigns written reasons.
GUIDRY, Judge (concurring in part and dissenting in part).
I fully concur with my brethren of the majority in their conclusions on the issues of negligence and contributory negligence, however, I am unable to agree with the views of the majority on the issue of quantum insofar as the awards for loss of support and conscious pre-death suffering are concerned. I believe that the awards made by the trial court for these items of damages are excessive and should be reduced.
The trial court awarded to Mrs. Aymond and her children the sum of $600,000.00 for loss of support.
The rule of appellate review as it applies to awards of general damages was rather recently set forth in the case of Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) as follows:
"The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances *392 peculiar to the case under review, having in regard also that the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, including that of residual pain. The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages."
With particular regard to a damage award for loss of support the rule is as announced by former Chief Justice McCaleb in the case of Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968):
"Then, too, consideration must be given to the settled jurisprudence of this Court that allowance of monetary damages for loss of future earnings (or support of dependants in case of death) cannot be calculated with mathematical exactitude; that they are speculative in character and the `... most that the courts can do ... is to exercise a sound judicial discretion and award such amount as, all the circumstances considered, may seem just to both litigants and not unduly oppressive to either.' Dobyns v. Yazoo & M. V. R. Co., 119 La. 72, 43 So. 934. See also Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183, 87 A.L.R.2d 246; and Pennington v. Justiss-Mears Oil Company, 242 La. 1, 2, 134 So.2d 53."
Gerald Aymond was 37 years old at the time of his death. He had a life expectancy of 33.5 years and a work life expectancy of 25.6 years. He was a graduate of Louisiana Tech University and held a degree in Petroleum Engineering. At the time of his death he was employed by South Louisiana Production Company, a subsidiary of Central Louisiana Electric Company, as a Vice-President in charge of production at an annual salary of $19,400.00. Mr. Aymond was well thought of by his employer and was definitely being considered for a promotion at the time of his death. There is evidence in the record to the effect that if Mr. Aymond had lived and if as contemplated he had been placed in charge of exploration and development by this employer within a few years he would have earned an annual salary of $40,000.00.
Dr. Herbert Hamilton, Ph.D., testified as an expert actuary. Dr. Hamilton computed the economic loss suffered by Mrs. Aymond and her children and reached the conclusion, by application of various mathematical formulae, that the Aymond family suffered a loss of $949,130.00. Defendant offered no expert testimony to counter that of Dr. Hamilton, nor did it seek to challenge his method of computation. As aforesaid, on the basis of the evidence presented the trial court arrived at an award of $600,000.00. I believe that this award is excessive and constitutes an abuse of the great discretion reposed in the trial court. In my opinion this award is excessive for the following reasons. In determining the amount of this award it is apparent that the trial court placed too great emphasis on the mathematical calculations of Dr. Hamilton. Although I have no real quarrel with Dr. Hamilton's actuarial computations they were based in some measure on speculation. Dr. Hamilton used a figure of $40,000.00 annual salary beginning with the year 1975 although the record reflects that in actuality the deceased was earning at the time of his death an annual salary of $19,400.00. In any event, although evidence such as that presented by Dr. Hamilton can serve as guide-posts in testing reasonableness (Tillman v. Canal Insurance Company, 305 So.2d 602, (La.App. 1st Cir. 1974)) it cannot serve as a basis or as a substitute for sound judicial discretion in fixing an award. Viator v. Gilbert, *393 supra. In addition although I am fully cognizant that awards made in other cases provide no scale of uniformity such awards are to be considered in determining whether an issue of abuse of trial court discretion is present. I, like counsel for defendant, have searched the jurisprudence of this State and have failed to find a single case in which damages of the magnitude of those awarded by the trial judge for loss of support are present. Although the cases hereafter referred to are not entirely similar from a factual standpoint they do serve to emphasize the lack of uniformity between the award made in this case and in others even if adjustment is made for age differences, income at time of death and future potential.
In Tillman v. Canal Insurance Company, 305 So.2d 602, (La.App. 1st Cir. 1974) the court awarded $100,000.00 as loss of support to a widow and one child. The decedent was 41 years of age had a work life expectancy of 23.2 years and had average earnings for four years prior to death in the sum of $7,416.00.
In LeJeune v. State, Department of Highways, 215 So.2d 150 (La.App. 3rd Cir. 1968) the court awarded $65,000.00 to a widow for loss of support and loss of love, affection and companionship. Mr. LeJeune, the decedent, was 36 years of age and had earnings of $7800.00 per year.
In Petree v. Crowe, 272 So.2d 399 (La.App. 2nd Cir. 1973) the court awarded $130,000.00 to a widow and one child for loss of support and loss of love, affection and companionship. The decedent Petree was 23 years of age and had annual earnings of $6500.00 per year.
In Broussard v. Saia Motor Freight Line, Inc. et al., 277 So.2d 488 (La.App. 1st Cir. 1973) the court awarded a widow and two minor children a total sum of $396,000.00 for loss of love and affection, loss of support, pain and suffering of the decedent prior to his death, and special damages. Mr. Broussard, deceased, was 29 years old, had a work life expectancy of 32.3 years, and at the time of his death was earning in excess of $16,000.00 per year.
In this case the trial court awarded to Mrs. Aymond and her children the sum of $200,000.00 for loss of love and affection. My brethren of the majority and I agree that this award should not be disturbed. However, when this award is added to the award for loss of support the lack of uniformity of the award made in this case with other similar cases is obvious.
For the foregoing reasons I conclude that the award for loss of support made by the trial court is a manifest abuse of the trial court's discretion. My own examination of the record prompts me to conclude that an award to Plaintiff and her four children in the amount of $400,000.00 for loss of support would be neither excessive nor inadequate.
The trial court awarded Mrs. Aymond and her children the sum of $7500.00 for the pain and suffering endured by Gerald Aymond prior to his death. The majority affirms this award. In my opinion this award is excessive and constitutes a manifest abuse of discretion, for the reason that there is no evidence whatever of conscious pre-death suffering and the award is greatly disproportionate with awards made in similar cases, i. e., Hall v. State, through the Department of Highways, 213 So.2d 169 (La.App. 3rd Cir. 1968) and LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La.App. 4th Cir. 1972). I would reduce the amount awarded to the sum of $2500.00.
For these reasons I respectfully dissent from the action of the majority in affirming the quantum of the awards made by the trial court for loss of support and conscious pre-death suffering of plaintiff's decedent.